JOSEPH E. WALSH, Appellant, v. THE ASSOCIA-
TION OF MASTER PLUMBERS OF ST.
LOUIS, MISSOURI et al., Respondents.

St. Louis Court of Appeals, December 16, 1902.

1. **Monopolies:** REGULATION OF PRICES: STATUTORY CON-
STRUCTION: BOYCOTT. Under the direct provisions of Revised
Statutes 1899, chapter 143, article 2, section 8978, an agreement be-
tween a plumbers' association and dealers and manufacturers,
whereby the latter agree not to sell supplies to others than mem-
bers of the association, and the former to boycott any dealer found
selling to a non-member, entered into for the purpose of fixing
prices and limiting the production of such articles, was unlawful.

2. ———: ———: PLEADING AND PRACTICE: REMEDY: STAT-
UTORY CONSTRUCTION. Section 8978, Revised Statutes 1899,
declares agreements to regulate prices or to control or limit trade,
illegal, and section 8982, Revised Statutes 1899, to furnish an ad-
ditional remedy for the control and restraint of pools, trusts and
conspiracies in restraint of trade: *Held,* that any remedy exist-
ing before the enactment of the above was not taken away, nor
abridged by section 8979, Revised Statutes 1899, which makes it the
duty of the Attorney-General and the prosecuting attorneys under
his direction, to institute proceedings to restrain such illegal agree-
ments.

3. ———: ———: ———: INJUNCTION, WHEN IT WILL LIE:
PRACTICE, TRIAL. Injunction will lie to dissolve an illegal agree-
ment between a plumbers' association and dealers and manufac-
turers, whereby the latter agree not to sell to others than members
of the association, and the former to boycott any dealer found sell-
ing to a non-member, and to restrain the enforcement of such agree-
ment against a plumber who, by reason thereof, has been unable
to purchase supplies with which to do his work.

Appeal from St. Louis City Circuit Court.—*Hon. Hora-
tio D. Wood,* Judge.

REVERSED.

*Cunningham & Maurer* for appellant.

(1) Our code of civil procedure provides that "Every action shall be prosecuted in the name of the real party in interest." Sec. 540, R. S. 1899. And the petition herein certainly shows that the plaintiff is the real party in interest. (2) Whatever defendants counsel may have to say about plaintiff's remedy at law, it is true that he can not have an adequate remedy at law and it is also true that "the prevention of vexatious litigation and multiplicity of suits constitute a favorite ground of equity jurisdiction." 44 Mo. App. 626; 51 Mo. 100; 54 Mo. 577; 112 Mo. 610; 130 Mo. 323. (3) Because the law imposes upon the Attorney-General a duty, this does not take from the injured citizen the right to ask for redress in the courts of justice. Section 10 of our Bill of Rights states: "The courts of justice shall be open to every person and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay."

*Seneca N. & S. C. Taylor* and *Charles Erd* for respondent other than Rumsey & Sikemeier Co.

(1) The amended petition fails to state facts sufficient to constitute a cause of action against the respondents, or any of them. The refusal of the corporations who are before this court as respondents to deal with appellant, was not the denial of any right belonging to him. Hunt v. Simonds, 19 Mo. 583; Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212; State ex rel. v. The Associated Press, 159 Mo. 410; Bohn Mfg. Co. v. Hollis, 54 Minn. 223; Ulery v. Chicago Live Stock Exchange, 54 Ill. App. 233; Cooley on Torts, 278; Tiedeman's Lims. Police Powers, sec. 92. (2) The mere fact that respondents united in such refusal would no more constitute a violation of any right of appellant, of which he could complain in a court of justice, than would the refusal of one to trade with him. Hunt v. Simonds, 19 Mo. 583; Bohn Mfg. Co. v. Hollis, 54 Minn. 223; Ulery v. Chicago Live Stock Exchange, 54 Ill. App. 233; Ins.

Co. v. Board of Fire Underwriters, 67 Fed. Rep. 310; in re Greene, 52 Fed. Rep. 119; Snow v. Wheeler, 113 Mass. 179; Bowen v. Matheson, 96 Mass. 499; Ins. Co. v. State, 86 Tex. 250.

BLAND, P. J.—The following is the petition, omitting caption:

"Now, this day comes the plaintiff in the above entitled cause and, by leave of court first had and obtained, files this his amended bill.

"Plaintiff states that the said Association of Master Plumbers of St. Louis, Missouri, is composed of the following named persons, who are members thereof, to-wit:"

(The names of three hundred, or more, persons and firms, carrying on the trade of master plumbers in the city of St. Louis, are then set forth.)

"That the defendant, F. A. Brandt, is the president of said association, and that J. J. McNary is the assistant secretary, and Phillip Schmidt is the secretary of said association.

"Plaintiff states that the defendants, viz., L. M. Rumsey Mfg. Co., Rumsey-Sikemeier Co., Cahil-Swift Mfg. Co., the National Plumbing Supply Co., N. O. Nelson Mfg. Co., Western Brass Mfg. Co., and Crane & Co., are corporations organized under the laws of this State, and are engaged in the manufacture and sale of goods and materials known as plumbers' supplies, with offices and places of doing business in the city of St. Louis, Missouri.

"For cause of action plaintiff states that he is, and has been for a long time, engaged in the business of plumbing in the city of St. Louis, and has complied with the state and local laws, and has been, and is, a duly licensed and registered plumber; that he has expended much money and time in learning the trade of plumbing and acquiring business and trade in St. Louis, Missouri, and that by years of devotion to his said business and trade, the plaintiff has established for himself a substantial and profitable business, which he carried on

successfully for many years until about the year 1899.

"Plaintiff states that these defendants (the said members of the Association of Master Plumbers and the said dealers and manufacturers) have entered into an understanding and combination in writing, combining and conspiring together against this plaintiff, and all other plumbers in this city who are not members of said association of master plumbers, whereby it is agreed and understood by and between these said master plumbers, that these said dealers and manufacturers in and of plumbers' supplies would not and should not sell to any master plumber any plumbers' supplies unless said master plumber desiring to buy said supplies was or first became, a member of said Master Plumbers' Association, and in order to more effectually enforce said agreement and carry out and further said conspiracy, said Master Plumbers' Association and said members thereof agreed and threatened to boycott any dealer found selling to a non-member of the said Master Plumbers' Association, and thereby tried to force and compel this plaintiff to join said Master Plumbers' Association and become a party to said conspiracy and combination, which this plaintiff refused to do, and, solely for the reason that this plaintiff refused to join and become a member of said Master Plumbers' Association and become a party to said unlawful combination, conspiracy, agreement and understanding, and refused to thereby aid and assist these defendants in their unlawful undertaking to create and maintain a monopoly for the purpose of controlling the business of plumbing in St. Louis, Missouri, and to control the price of plumbers' supplies in said city; and to limit and restrict the sale of said supplies as aforesaid, these defendants have for a long time in the past refused, and now refuse, to sell or permit to be sold to this plaintiff, or any other person in the city of St. Louis, any of said plumbers' supplies; that said supply dealers and manufacturers, in furtherance of their part of said wrongful agreement and conspiracy against this plaintiff, and to more effectually carry out and accomplish

the purpose of said combination, entered into an agreement and understanding among themselves and with said master plumbers, whereby it was agreed and understood that if any one of said dealers should sell or permit to be sold any of said supplies to any plumber, or other person in the city of St. Louis, Missouri, who did not belong to said Master Plumbers' Association, said dealer or manufacturer should be fined therefor the sum of $250.

"Plaintiff states that said conspiracy and combination, entered into and carried on, and now being carried on, was and is for the purpose of limiting competition and restricting trade and raising and controlling the prices of plumbers' supplies in the city of St. Louis.

"Plaintiff states that by reason of the aforesaid secret, wrongful and unlawful agreement, understanding, combination and conspiracy among and between these defendants, plaintiff has, for more than one year next before the filing of this suit, been denied by these defendants the right and privilege to buy said plumbers' supplies of the kind necessary and requisite with which to carry on his said business and trade of plumbing, and has been obliged to forego and abandon contracts to do plumbing where he could have earned large profits, but for the wrongful interference and restraint put upon him by these defendants.

"Plaintiff states that on divers occasions he has gone to the various supply houses owned and managed by defendants, and offered and desired to purchase plumbers' supplies; tendering the market price therefor, and that he needed said supplies and material in order to finish and do plumbing that he had contracted and agreed to do, and that defendants refused to sell to him said goods at any price, stating as their reason for so refusing to sell said supplies that he (meaning plaintiff) did not belong to said Master Plumbers' Association, and they (defendants) therefore, could not sell to him (plaintiff) any goods.

"Plaintiff states that these defendants, conspiring and working together as aforesaid, have driven and forced this plaintiff and many other reputable plumbers, almost, and in many instances entirely, out of business.

"Plaintiff states that by reason of this conspiracy and combination among those defendants, it is useless for him to make, or attempt to make and enter into contracts with his customers to do plumbing work, for the reason that he can not buy supplies and material with which to do and complete said work and contracts.

"Plaintiff states that on many occasions he has purchased from these defendants supplies, and paid for the same, and upon learning that the plaintiff (or person buying said supplies) was not a member of said association, the employees and agents of defendants have compelled plaintiff (or said purchaser) to return said supplies to defendant, and in some instances, the plaintiff, or person buying, or having bought said supplies, has been assaulted, and said supplies were forcibly taken from him by the agents and servants of the defendants engaged in selling said supplies.

"Plaintiff states that the said Master Plumbers' Association, and the said members thereof, have been for a long time, and are now, engaged with said supply dealers and manufacturers in said conspiracy, combination, understanding and agreement; that said conspiracy, combination, understanding and agreement is in violation of the laws of this State; that the same is in restraint of trade and in violation of the rights of the plaintiff, and the general public, and against public policy.

"Plaintiff states that by reason of the said unlawful agreement, combination, understanding and conspiracy, and the wrongful acts of these defendants, he has been greatly injured in his business—that of plumbing; that he has suffered great financial loss and damage by being prevented and restrained from carrying on his said business by reason of these defendants wrongfully re-

fusing to sell and preventing him from buying goods and supplies with which to carry on his business.

"Plaintiff states that by reason of the aforesaid wrongful acts of these defendants, plaintiff is, and has been compelled to pay exorbitant and high prices for plumbers' supplies, so that he is unable to compete with these defendants in the plumbing business.

"Plaintiff states that the aforesaid defendants, who are engaged in the manufacture and sale of said plumbers' supplies, are all of the persons or corporations known to the plaintiff who are engaged in selling and manufacturing said supplies in the city of St. Louis, Missouri, and that there are no other persons or corporations in said city from whom the plaintiff can buy or obtain said supplies of the kind and quality with which to do and carry on his business of plumbing.

"Plaintiff states that these defendants, who are engaged in the sale and manufacture of said supplies, as aforesaid, heretofore secretly entered into a conspiracy and understanding with these other defendants, the said members of the said Master Plumbers' Association, whereby it was agreed and understood that said dealers and manufacturers would not sell said plumbers supplies to any person in the city of St. Louis, except those who belonged to and were members of said Master Plumbers' Association, thereby intending to limit and restrict the sale and supply of plumbers' supplies to those persons who were members of said Master Plumbers' Association, and that in pursuance of and in carrying out said agreement, understanding and conspiracy, these said defendants have for a long time in the past refused to sell or permit to be sold and now refuse to sell or permit to be sold, to the plaintiff, or any other person, firm or corporation, any said plumbers' supplies, except such person was and is a member of said Master Plumbers' Association.

"Plaintiff states that he is now, and has for a long time in the past been, and will in the future be, unable to purchase from these defendants said plumbers' supplies in the usual course of trade, by reason of said unlawful

combination, conspiracy, understanding and agreement among and between these defendants, as aforesaid, and that his business and trade has been greatly injured and damaged thereby, and that this plaintiff has suffered great loss and damage by reason of the wrongful and unlawful acts of these defendants, as aforesaid, and that he will continue to suffer great loss and damage in his said business and trade in the future, and that plaintiff's said loss, injury and damage is and will be irreparable if these defendants are permitted to continue to carry out and engage in said unlawful agreement and understanding, combination and conspiracy which they are wrongfully threatening and intending to do, and that plaintiff has no adequate remedy at law.

"Plaintiff states that said agreement and understanding, combination and conspiracy, entered into and being carried out by these defendants, as aforesaid, and all of the said wrongful acts of these defendants done and being done, and the said wrongful intentions of these defendants to continue to do and cause to be done the wrongful and unlawful things herein complained of are in violation of the laws of this State and are in restraint of trade and against public policy.

"Wherefore, this plaintiff prays a temporary writ of injunction be issued against these defendants restraining and enjoining them, and each of them, from doing or causing to be done and from aiding and assisting in any way the doing of any of the acts and things herein complained of, and that said Master Plumbers' Association be declared illegal and the said association be dissolved by the order of this court, and that said Master Plumbers' Association, and the members thereof, be enjoined and restrained from in any way interfering with this plaintiff in his right and effort to purchase said plumbers' supplies from any of these defendants, or any person or corporation in the city of St. Louis that may or shall be engaged now or hereafter in the sale or manufacture of plumbers' supplies, and that, upon a full hearing by this honorable court of this com-

plaint, said injunction be made permanent as prayed for, and for such other and further relief, orders and judgments as to your honor may seem just and proper, and that defendants be adjudged to pay the costs of this suit."

Defendants demurred to the petition on the following grounds:

"First. Because said petition does not state facts sufficient to constitute a cause of action against these defendants, or any of them.

"Second. Because, upon the averments in said petition, plaintiff is not entitled to the relief prayed for, nor to, any equitable relief.

"Third. Because, under the averments in said petition, it appears that for any cause for complaint which plaintiff may have against these defendants, or any of them, he has a complete and adequate remedy at law.

"Fourth. Because if plaintiff has any right of action for any alleged violation of the statutes of Missouri, he is afforded a complete and adequate remedy at law under the provisions of section 8981 of the Revised Statutes of Missouri of 1899.

"Fifth. Because, if any right to proceed in a court of equity exists against these defendants, or any of them, section 8979 of the Revised Statutes of Missouri of 1899, expressly provides that the same shall be brought by the Attorney-General of the State of Missouri, or by the prosecuting attorney of the city of St. Louis."

The court recalled the temporary restraining order thereupon issued, sustained the demurrer and rendered judgment thereon. Plaintiff appealed.

In Hunt v. Simonds, 19 Mo., at page 586, the court said: "It is obviously the right of every citizen to deal or refuse to deal with any other citizen, and no person has ever thought himself entitled to complain in a court of justice of a refusal to deal with him, except in some cases where, by reason of the public character which a party sustains, there rests upon him a legal obligation to deal and contract with others."

The same doctrine is announced in Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212; State ex rel. Star Pub. Co. v. Associated Press, 159 Mo. 410; Carew v. Rutherford, 106 Mass. 13; Brewster v. C. Miller's Sons, 38 L. R. A. (Ky.) 505. Cooley, in his work on Torts (2 Ed.), page 328, states the principle broadly as follows: "It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice."

In Walker v. Cronin, 107 Mass. 555, it is said: "Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbances or annoyance. If disturbance or loss comes as a result of competition, or the exercise of like rights by others, it is *dammum absque injuria,* unless some superior right by contract or otherwise is interfered with."

A capitalist has the right to employ his capital or to hide it away and refuse to use it, so long as he does not become a public charge, and a man without capital may labor or refuse to labor, so long as he keeps out of the poorhouse. So also have capitalists the right to combine their capital in productive enterprises and by lawful competition drive the individual producer and the smaller ones out of busniess. And laborers and artisans have the right to form unions and by their united effort fight competition by lawful means. Snow v. Wheeler, 113 Mass. 179; Master Stevedores' Association v. Walsh, 2 Daly 1; Reg. v. Rowlands, (1851) 2 Den. C. C. 364. And courts will not lay their hands upon either to restrain them, however fierce the competition, so long as their methods are lawful. But if either steps without the pale of the law and by fraud, misrepresentation, intimidation, obstruction or molestation hinders one in his business or his avocation as an artisan or

laborer, courts have not hesitated to interfere and to afford remedial relief, either by awarding compensatory damages in an action at law or, where the injury is a continuing one, by granting injunctive relief. Lucke v. Clothing Cutters' and Trimmers' Assembly, etc., 19 L. R. A. 408; Quinn v. Laethem, H. L. I. 495 (1901); Toledo A. A. & N. M. R. Co. v. Pennsylvania Coal Co., 19 L. R. A. 395; Jackson v. Stanfield, 137 Ind. 592; Olive v. Van Patten, 7 Tex. Civ. App. 630; Coeur d'Alene Consolidated & Mining Co. v. Miners' Union, 51 Fed. Rep. 260; Beadle v. Perry, L. R. 3 Eq. 465; Broome v. N. Y. & N. J. Tel. Co., 42 N. J. Eq. 141; Doremus v. Hennessy, 176 Ill. 608.

In Emack v. Kane, 34 Fed. Rep. 46, BLODGETT, J., said: "I can not believe that a man is remediless against persistent and continued attacks upon his business, such as have been perpetrated by these defendants against the complainant, as shown by the proofs in this case. It shocks my sense of justice to say that a court of equity can not restrain systematic and methodical outrages like this by one man upon another's property rights. If a court of equity can not restrain an attack like this upon a man's business, then the party is certainly remediless, because an action at law, in most cases, would do no good, and ruin would be accomplished before an adjudication would be reached. True, it may be said that the injured party has a remedy at law; but that might imply a multiplicity of suits, which equity often interposes to relieve from. But the still more cogent reason seems to be that a court of equity can, by its writ of injunction, restrain a wrongdoer, and thus prevent injuries which could not be fully redressed by a verdict and judgment for damages at law."

The petition alleges that the agreement between the Association of Master Plumbers and the respondent corporations is for the purpose of fixing prices and limiting the production of plumbers' supplies. Agreements of this character are prohibited by section 8978, article 2, chapter 143, Revised Statutes 1899, and they

are therefore unlawful. But it is contended by respondents that, conceding the agreement to be unlawful because within the prohibition of said section, the illegal agreement concerns the public only and can only be declared illegal in a suit brought for the purpose by the Attorney-General or the prosecuting attorney of the county as provided by the next succeeding section (8979). Section 8982 of the same article expressly provides that it is the purpose of the article to provide an additional remedy for the control and restraint of pools, trusts and conspiracies in restraint of trade. And it is evident that if the remedy prayed for by appellant existed before the enactment of said article 2, that it is not taken away or in any way abridged by section 8979 of the article.

The contract being unlawful, it remains to be seen whether or not the appellant's private rights were obstructed or interfered with as a result of the illegal agreement. The petition alleges that they were; that he was unable to purchase supplies, on account of said agreement, with which to do his work and was prevented from taking plumbers' contracts for the reason he could not procure the supplies necessary to fill the contracts; that the only reason the respondent corporations have for refusing to sell him supplies is because he is not a member of the Association of Master Plumbers and that one of the purposes of the illegal agreement is to coerce him to become a member of said association.

In Doremus v. Hennessy, 176 Ill. 608, it was held that members of a trade association who combined to induce or compel other persons not to deal nor enter into contracts with one who will not join the association or conform his prices with those fixed by the association will be liable for the injuries caused to him by loss of business resulting from such combination.

In Jackson v. Stanfield, supra, it was held that "A combination of retail lumber dealers to destroy the business of brokers and commission dealers, who did not keep a lumber yard with an assorted stock of lum-

ber, by coercing wholesalers to refuse to make sales to such brokers or lose the business of the members of such combination, is unlawful and renders a member who procures action by the association to the injury of the brokers liable to the latter for damages." An analogous case is Olive v. Van Patten, supra.

The allegations of the petition show that the respondents have conspired together to boycott the appellant and other master plumbers, of the city of St. Louis, who have not joined the Association of Master Plumbers. A boycott is defined to be an illegal conspiracy in restraint of trade. Casey v. Cincinnati Typographical Union No. 3, 45 Fed. Rep. 135.

In State ex inf. Crow, Attorney-General v. Fireman's Fund Insurance Co. et al., 152 Mo. 1, a conspiracy is defined to be a combination to accomplish an unlawful end by lawful means or a lawful end by unlawful means.

In Mulcahy v. Reg. (1886), L. R. 3 H. L. at page 317, WILLES, J., said: "A conspiracy consists not merely in the intention of two or more, but in the agreement of two or more to do an unlawful act, or to do a lawful act by unlawful means. . . . The number and the compact give weight and cause danger."

In Reg. v. Warburton (1870), L. R. 1 C. C. 276, COCKBURN, C. J., said: "It is not necessary, in order to constitute a conspiracy, that the acts agreed to be done should be acts which if done would be criminal. It is enough if the acts agreed to be done, although not criminal, are wrongful, i. e., amount to a civil wrong."

An instructive case in this connection is the House of Lords case of Quinn v. Leatham (1901), H. L. 1 A. C. 495, wherein it was unanimously held that "A combination of two or more, without justification or excuse, to injure a man in his trade by inducing his customers or servants to break their contracts with him or not to deal with him or continue in his employment is, if it results in damage to him, actionable. The case is interesting in the review made of the case of Allen v. Flood

(1898), A. C. 1, construing the case as not deciding that boycotting is unlawful.

Applying the doctrine of these cases to the allegations of the petition, there can be no question that the agreement between the respondents is an illegal conspiracy and that its effect is to inflict a civil wrong upon appellant, and that this wrong is a continuing one and, according to all the authorities, entitles the appellant to injunctive relief so far as a court of equity is authorized to administer it within the bounds of equitable jurisprudence. We think it is competent for the court to declare the agreement complained of as illegal and void and to restrain the parties to the agreement from keeping its terms or demanding that they be kept and thus leave the respondent corporations and each of them free to deal or not to deal with appellant as they may choose. In so far as it appears from the allegations of the petition the Association of Master Plumbers is not an illegal association. Presumably it was formed for the purpose of mutual protection and to fight competition in their business within the boundaries of the city of St. Louis. As we have seen, the association may lawfully do this by lawful means and methods to the extent of driving non-members out of the business. We see nothing, therefore, in the petition that would authorize a court of equity to dissolve the association.

The cases of Bohn Mfg. Co. v. Hollis, 54 Minn. 223; Continental Ins. Co. v. Board F. Underwriters, etc., 67 Fed. Rep. 310, and Mogul Steamship Co. v. McGregor, 15 L. R. Q. B. Div. 476, and other cases cited and relied on by the respondents, are cases wherein no illegal conspiracy was proven, but where the parties only exercised the right to trade or not to trade with others and in which there was fierce competition but no unlawful act and are therefore not analogous to the case at bar.

The judgment is reversed and the cause remanded with directions to the circuit court to set aside the order sustaining the demurrer and to overrule the same with leave to respondents to answer if they are so advised.

*Barclay* and *Goode, JJ.,* concur; the former concurs in the result.

CONCURRING OPINION.

GOODE, J.—I have consulted many authorities on the propositions involved in this case and think they warrant the following conclusions:

First.    The    combination    of    the    defendants charged in the petition is a conspiracy to create a monopoly to raise prices and is in restraint of trade and void at common law.    Sufficient acts of malice and violence towards this plaintiff are averred to constitute a cause of action.  The case stated differs from Hunt v. Simonds, 19 Mo. 583, both in the purpose of the combination, there being no intention in that case to control prices or restrain trade, and in the malicious violence alleged to have been exhibited against this appellant. See United States v. Addystone Pipe & Steel Co., 85 Fed. R. 211, where the cases are collected; Sinsheimer v. United Garment Workers, 26 N. Y. Supp. 152; Casey v. Typographical Union, 45 Fed. 135; Mogul Steamship Co. v. McGregor, L. R. 23 Q. B. Div. 598, L. R. App. Cas. 25, in which the meaning of malice, when said to create a right of action in such cases, is defined.    Croff v. McCananphy, 79 Ill. 346.    While the particular agreement dealt with in Skrainka v. Scharringhausen, 8 Mo. App. (St. L.) 522 ,was held valid, the reasoning of the opinion supports Walsh's case and the same is true of Mogul Steamship Co. v. McGregor, supra.

Second.    The combination alleged is a positive offense against our present statutes on the subject of pools and trusts, and is made actionable by them.    R. S. 1899, sec. 8978 et seq.; State ex inf. v. Firemens' Fund Ins. Co., 152 Mo. 1; U. S. v. Addystone Pipe & Steel Co., supra; People v. Sheldon, 139 N. Y. 251; U. S. v. Jellico Mountain etc., Co., 46 Fed. Rep. 432.

Third.    Injunction lies to dissolve the conspiracy and restrain the boycott of and violent acts against the

appellant, whose allegations show he is specially damaged and that the remedy furnished by the statutes is inadequate because the parties engaged in the conspiracy are numerous and the injuries to appellant continuous; so that a multiplicity of suits would be required to redress his grievances. 2, Eddy on Combinations, sec. 1010; Wire Co. v. Murray, 80 Fed. 811; U. S. v. Sweeny, 95 Fed. R. 434; Butchers Union Slaughter House v. Crescent City Live Stock Co., 111 U. S. 746; Casey v. Typographical Union, Sinsheimer v. United Garment Workers, supra; Jackson v. Stanfield, 137 Ind. 592; Toledo, etc., R'y Co. v. Penn. Co., 19 L. R. A. 387; U. S. v. Jellico Mountain, etc., Co., supra; Emack v. Kane, 34 Fed. R. 47.

The proposition that courts will only act to protect property rights against unlawful interferences like the one charged in the petition, so ably insisted on by respondent's counsel, must be qualified to the extent of regarding a man's right to labor as a property right, or at least as entitled to the same protection property rights are, and so the cases hold, and justly; for power and opportunity to labor is many a man's only capital. United States v. Sweeney, Wire Co. v. Murray, supra; United States v. Kane, 23 Fed. R. 748; State v. Glidden, 55 Conn. 46.

The rule that where a statute creates a right and a remedy to enforce it, the remedy provided is exclusive, only obtains to shut out relief in equity on the ordinary grounds of equitable jurisdiction, in so far as that remedy is adequate. People's R'y Co. v. Grand Ave. R'y Co., 149 Mo. 345; Hickman v. Kansas City, 120 Mo. 110. The statutory remedy is inadequate to redress appellant's wrongs for the reasons heretofore stated.

Neither is the Attorney-General, or some prosecuting attorney, the only party who can proceed against the respondents. The statutes give relief to private persons specially damaged, showing their policy is to protect not only the public, but individuals, against the injurious effects of unlawful combinations; and a pri-

vate remedy is useful, because it may be called into play as oppression is felt.

As to one person having the right to refuse to deal with another, that may be conceded and the argument built on the proposition namely, that a court of equity is therefore powerless to prevent the wrongs alleged, denied. While any or all dealers in plumbing materials may, *sponte sua*, refuse to sell to appellant, they can not combine and conspire to that end as the statute law now is. The unlawful combination may be decreed dissolved, the respondents restrained from conspiring against appellant and if he still finds himself oppressed by inability to purchase supplies, and makes a showing to the court that it is on account of a continuance of the conspiracy, a case for investigation would be presented, and if the facts satisfied the court its order had been disobeyed, punishment could be inflicted.

1 fully concur in *Judge Bland's* opinion.