BARATARIA CANNING COMPANY *v.* EDGAR C. JOULIAN.

1. TRUSTS AND COMBINES. *Price of commodities. Contract to limit. Code* 1892, §§ 4437, 4438.

A contract by which the defendant agreed to sell to plaintiff, a competing manufacturer, all the cove oysters which he should pack during certain months except three car loads per month, and stipulated that such three car loads should not be sold to the trade at a lower price than that offered to the trade by the plaintiff, is void as an agreement "to limit   .   .   .   the price of a commodity" within the prohibition of §§ 4437, 4438, code 1892.

2. SAME. *Commodity. Definition. Canned oysters. Code* 1892; § 4437.

Canned oysters, sold as merchandise, are a commodity within the meaning of code 1892, § 4437, prohibiting agreements "to limit increase or reduce the price of a commodity."

3. DEFINITION OF TRUST OR COMBINE. *Code* 1892, § 4437.

The words " and is inimical to the public welfare, unlawful and a criminal conspiracy," with which §4437, code 1892, concludes after defining what agreements shall constitute a trust or combine, are a mere declaration of the effect of the condemned agreement and not an added element of definition.

FROM the circuit court of Harrison county.

HON. GUION Q. HALL, Judge, presiding by exchange with HON. JAMES H. NEVILLE, Judge.

Action by the Barataria Canning Company, appellant, against E. J. Joulian, appellee. The declaration sets out the contract in full, which shows that plaintiff agreed to buy, and

defendant agreed to sell to it, all the cove oysters which defendant should pack during the months of January, February, March, and April, except three carloads per month, if defendant should desire to retain same. The contract contained the following provision: "The said three carloads per month not to be sold to the trade by the party of the second part at a lower price than the price offered the trade by the party of the first part." The defendant demurred to the declaration on the ground that the contract was in violation of the provisions of § 4437, code 1892, on "Trusts and Combines," which are as follows:

"Sec. 4437. Definition of Term; Criminal Conspiracy.—A trust and combine is a combination, contract, understanding, or agreement, express or implied, between two or more persons, corporations, or firms or associations of person, or between one or more of either with one or more of the others—(a) In restraint of trade; (b) to limit, increase, or reduce the price of a commodity; (c) to limit, increase, or reduce the production or output of a commodity; (d) intended to hinder competition in the production, importation, manufacture, transportation, sale, or purchase of a commodity; (e) to engross or forestall a commodity; (f) to issue, own, or hold the certificates of stock of any trust or combine; (g) to place the control, to any extent, of business or of the products or earnings thereof, in the power of trustees, by whatever name called; (h) by which any other person than themselves, their proper officers, agents, and employes shall, or shall have the power to dictate or control the management of business; or, (i) to unite or pool interests in the importation, manufacture, production, transportation, or price of a commodity; and is inimical to the public welfare, unlawful, and a criminal conspiracy." Section 4438 makes all contracts and agreements to enter into or pursue any trust or combine void, and provides that they cannot be enforced in any court. The demurrer was sustained, and plaintiff appealed to the supreme court.

*Mayes & Harris,* for appellant.

1. What is it that the statute denounces as a trust? We submit that the words "is inimical to the public welfare, unlawful, and a criminal conspiracy" must be taken as a part of the definition of each and every one of the enumerated particulars, beginning with that one indicated by the letter "a" and running through to the letter "i."

It is not every contract to limit, increase, or reduce the price of a commodity which is denounced by the statute; but only such as are "inimical to the public welfare," etc.

If this be not the correct interpretation of this statute, then the words which we have been considering ("and is inimical to the public welfare, unlawful and a criminal conspiracy") are nugatory. Disconnected from the other part of the sentence, they mean nothing. If they are not a part of the essential description of the things prohibited to be done, then what meaning can be attributed to them must be merely the abstract, academic and useless assertion that a trust and combine is inimical to the public welfare, is unlawful, and is a criminal conspiracy, a proposition which needs no declaration, and which, when declared, amounts to nothing.

These words, however, as a part of the definition in each instance, become sensible and useful. Indeed, they save the statute from absurdity and unconstitutionality. Eliminate these words from the statute, and we have a law enacted by the legislature which, amongst other things, under the letter "b" would make it a crime for merchants under any circumstances to agree to sell their goods at a lower price, as for instance in times of public distress or epidemics. We would have a statute which makes it a crime for persons to agree to erect a factory; for the unavoidable effect of a factory is to increase the output of the commodity which the factory proposes to make. We have a statute which would make it a crime (under the letter "g") for a partnership to make an ordinary commercial assignment; for persons to organize a busi-

ness and to agree that the affairs of the business should be managed by a board of directors.

2. It is to be noticed that this contract, in its very essence, was really nothing but a contract for labor. It was a contract simply to pack oysters. There is no showing in this record that the oysters to be packed had been raised in a private ground or bed, or that they belonged to the defendant. In the absence of such proof, this court will presume, what is matter of general knowledge, that the oysters along the Gulf Coast are common property, and belong to whomsoever shall take them. In this respect they are like water. The title to them comes by occupancy only.

It is quite doubtful whether oysters in their natural beds, being property of the public generally, and not of any particular individual, can in any proper sense be said to be a commodity within the purview of our statute.

As remarked above, this contract was really nothing but a contract for the labor of gathering and canning the oysters. The contract itself on its face provides for the furnishing of labels, cans, etc., by the plaintiff to the defendant, and fixes the price for the same, as the court will see by reference to the contract. The fact that the oysters as canned became a commodity, does not make a contract for the canning of them a contract for the purpose and sale of a commodity in the sense of the statute; at all events in the sense of the statute so highly penal as in this, which must be strictly construed. *State* v. *Henke,* 19 Mo., 225. The case cited was one in which it was held that the hiring of a slave, without the written consent of his master, to maul rails at a stated price per hundred, was not a violation of a statute which prohibited buying, dealing in, or receiving commodities from slaves without such written consent. Webster defines a commodity as follows: "That which affords convenience, advantage, or profit, especially in commerce, including everything movable that is bought and sold (except animals), goods, wares, merchandise, produce of land

and manufactures," etc. If therefore under this definition cattle, horses, swine, etc., are not commodities, can it be reasonably held that oysters in their natural condition, accessible to any person who shall take them, are commodities?

But aside from that point, and treating oysters as commodities, this contract contains none of the features which are objectionable to public policy. It makes no effort or pretense at a monopoly. It only stipulates that certain part of the fruits of the labor of defendant in gathering oysters should be for the benefit during a limited period of the plaintiff. The defendant was not an owner of the oysters to be gathered in any sense; still less the exclusive owner. His agreement to gather oysters for the plaintiff did not, and could not, have the slightest tendency to prevent any other person from gathering oysters for the plaintiff out of the very same beds from which defendant took them. If the contract had been even more like a contract in restraint of trade than it is, it still would not have been objectionable to this statute. It is well settled law that where two manufacturers are engaged in the making of the same article, one can take the entire output of the other. Indeed, there is a broader contract which it is also well settled that parties can make. If two merchants or manufacturers are engaged competitively in the same place, one can buy out the other, although his object is to get rid of the competition. *Carter-Crum Co.* v. *Peurrung,* 86 Fed. Rep., 439; 1 Eddy on Combinations, sec 281.

And see generally, 1 Eddy on Combinations, chs. 6, 7, and 8, *passin;* and especially secs. 189 to 210, and sec. 232 (2). See, also, the able and exhaustive opinion of Judge Taft in *United States* v. *Addyston Co.,* 85 Fed. Rep., 271.

Another point. Even were it possible that this contract is in violation of ch. 140, code 1892, that fact does not appear on the face of this declaration, and it was error in the court below to sustain a demurrer to the declaration on that ground.

A court will not assume that the purposes and effects of a

combination are to unduly raise the prices of the commodity produced, but such purposes must be shown affirmatively in the pleadings, and it must be made to appear clearly by the evidence, nor will a court presume an agreement to be void as against public policy when it is susceptible of a construction which would make it legal. 1 Eddy on Combinations, secs. 288 to 291.

*George S. Dodds,* for appellee.

[The brief of counsel for the appellee is not in the record, and cannot be found by the reporter.]

Whitfield, C. J., delivered the opinion of the court.

The agreement is plainly one "to limit the price of a commodity." The seller agrees that, as to three carloads per month—half the output—he will be bound absolutely by the price fixed by the purchaser of the other half. The price could thus be arbitrarily fixed without any reference to the state of the market, and each party is to sell at the same price, no matter what the supply or demand may be. As well said in *Oil Co.* v. *Adoue* (1892), 83 Tex. 650 (19 S. W., 274; 15 L. R. A., 598; 29 Am. St. Rep., 690): "It would seem that the agreement may be illegal if the natural or necessary consequences of its operation are to prevent competition and cause fictitious prices, independently of the law of supply and demand, and to such an extent as to injuriously affect the interest of the public, or the interest of any particular class of citizens who may be especially interested, either as producers or consumers, in the articles or staples which are the subjects of the restrictions imposed by the contract. Likewise the agreement may, in some instances, be void, because of the unreasonable or oppressive restrictions imposed upon even one of the parties to it." See 1 Eddy on Combinations, ch. 15, particularly sec. 592. The contract in this case is a plain combination and agreement between competing manufacturers not to sell any-

where, to anybody, the commodity (oysters) for a less price by either than that at which the other sells. The appellee cannot sell except at prices fixed by the appellant, and these prices may be fixed arbitrarily, without regard to the market in any way, the appellant nowhere agreeing that it should be controlled by the demand and supply.

The contention of the appellant that oysters are not a "commodity," will not bear investigation. The words "and is inimical to the public welfare, unlawful, and a criminal conspiracy," are a mere declaration of the effect of a trust—not an added element of definition attaching to each of the definitions already perfectly given in § 4437, code 1892, from paragraphs "a" to "i" inclusive.

*Affirmed.*