RETAIL LUMBER DEALER'S ASSOCIATION V. STATE OF MISSIS-
SIPPI.*

[48 South. 1021.]

TRUSTS AND COMBINES.   *Code* 1906, § 5002.. *Monopolies.  Combinations
in restraint of trade.*

Under Code 1906, § 5002, making a combination to hinder competi-
tion in the sale or purchase of a commodity a criminal conspir-
acy:—

(*a*) It is immaterial that the means adopted be peaceable and
otherwise lawful, if the intent be to accomplish the unlawful
object; and

(*b*) A combination of retail lumber dealers under an agreement
not to purchase from any manufacturer or wholesaler competing
with retailers, is unlawful.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

The state of Mississippi, suing on the relation of the at-
torney-general, appellee, was complainant in the court below;
the Retail Lumber Dealers' Association and the several members
thereof, appellants, were defendants there.   From a decree in
complainant's favor the defendants appealed to the supreme
court.   The facts are stated in the opinion of the court.

*Mayes & Longstreet* and *E. L. Brown,* for appellants.

Counsel argued the case fully in their brief, citing the fol-
lowing authorities: *Cleland v. Anderson,* 5 L. R. A. (N. S.)
136; *United States v. Trans-Missouri Freight Assn.,* 166 U. S.
290; *McCauley v. Tierney,* 37 L. R. A. 459; *In re Corning,* 51
Fed. 211; *Whitwell v. Tobacco Co.,* 125 Fed. 460; *Phillips v.
Iola Cement Co.,* 125 Fed. 594; *Montague v. Lowry,* 193 U. S.

* The decision in the case was affirmed by the supreme court of the
United States, see *Grenada Lumber Co. v. State of Mississippi,* 217 U. S.
433.

38; *Addyston Pipe, etc., Co. v. United States,* 175 U. S. 211; *Gray v. Building Trades Council,* 91 Minn. 171; *Barr v. Essex Trades Council,* 53 N. J. Eq. 101, 122, 30 Atl. 881; *Toledo, etc., Co. v. Pennsylvania, etc., R. Co.,* 54 Fed. 738; *Standard Oil Co. v. Adou,* 15 L. R. A. 598; *Delz v. Winfree,* 80 Tex. 400; *Bohn v. Hollis,* 54 Minn. 454; *Herriman v. Menzies,* 37 L. R. A. 318; *Brewster v. Miller,* 38 L. R. A. 505; *Searles v. Yazoo, etc., R. Co.,* 85 Miss. 528; *Allgeyer v. Louisiana,* 165 U. S. 578; *Bailey v. Master Plumbers' Assn.,* 103 Tenn. 99; *Jackson v. Stanfield,* 23 L. R. A. 588; *Aikens v. Wisconsin,* 195 U. S. 154; *Houck v. Wright,* 77 Miss. 478; *Hopkins v. United States,* 171 U. S. 578; *Greene v. United States,* 52 Fed. 104.

*R. V. Fletcher,* attorney-general, and *J. B. Stirling,* attorney-general, for appellee.

Counsel argued the case fully in their brief, citing the following authorities: *Lowe v. Lawlor,* 208 U. S. 488; *Hammond Packing Co. v. Arkansas,* 212 U. S. 322, 53 L. Ed. 530; *Waters-Pierce Oil Co. v. Texas,* 212 U. S. 86, 53 L. Ed. 417; *State ex rel. Hadley, Att'y.-Gen. v. Standard Oil Co.,* 116 S. W. 902; *McClelland v. Anderson,* 5 L. R. A. 136; *Moore v. Bennett,* 15 L. R. A. 361; *Lovejoy v. Michels,* 13 L. R. A. 770; *Buffalo Lubricating Co. v. Standard Oil Co.,* 12 N. E. 825; *Ditz v. Winfried,* 26 Am. St. Rep. 755; *United States v. Jello Coal & Coke Co.,* 12 L. R. A. 753; *Jacobs v. Brown Pharmacy Co.,* 57 L. R. A. 547; *Bailey v. Master Plumbers' Ass'n,* 103 Tenn. 99, 52 S. W. 853, 46 L. R. A. 451; 1 Eddy on Combinations, § 560 (note on page 479); *Anderson v. Jett,* 6 L. R. A. 390; *Yazoo, etc., R. Co. v. Searles,* 85 Miss. 528; 24 Am. & Eng. Ency. Law (2d ed.) 842; 2 Eddy on Combinations, § 719; *State v. Armour Packing Co.,* 173 Mo. 356; *India Bagging Ass'n v. Kock,* 14 La. Ann. 164; 20 Am. & Eng. Ency. Law (2d ed.) 850; *Smylie v. Kansas,* 196 U. S. 447, 49 L. R. A. 546; *National Oil Co. v. Texas,* 197 U. S. 115; *Northern Securities Co. v. United States,* 193 U. S. 197.

Argued orally by *Edward Mayes,* for appellant, and by *J. B. Stirling,* attorney-general, for appellee.

Harper,[*] Special Judge, delivered the opinion of the court.

On or about the 14th day of March, 1906, certain persons, partnerships, and corporations, then engaged in the retail lumber business in Louisiana and Mississippi, organized an association known as the "Retail Lumber Dealers' Association of Mississippi and Louisiana." A constitution for the government of this association was duly adopted by them.

Under the head of "Declaration of Purpose," which is a preamble to the constitution, we find, among others, the following provision:

"We realize the convenience, and the necessity, of the retail lumber dealer to every community, and we are interested in the promotion of the general welfare and the perpetuation of the retail lumber business. We recognize the absolute right of every person, partnership, and corporation to establish and maintain as many retail yards as. they may wish, whensoever and wheresoever. We recognize the right of the manufacturer and wholesale dealer in lumber products to sell lumber in whatever market, to whatever purchaser, and at whatever price, they may see fit. We also recognize the disastrous consequences which result to the retail dealer from direct competition with wholesalers and manufacturers, and appreciate the importance to the retail dealer of accurate information as to the nature and extent of such competition where any exists. And, recognizing that, we, as retail dealers in lumber, sash, doors, and blinds, cannot meet competition from those from whom we buy, we are pledged as members of this association to buy only from manufacturers and wholesalers who do not sell direct to consumers, where there

[*] Fletcher, J., having been of counsel in this case before his appointment to the bench recused himself and William R. Harper, Esq., a member of the supreme court bar, was appointed and presided in his place.

are retail lumber dealers who carry stock commensurate with the demands of their communities, and we are pledged not to buy from lumber commission merchants, agents, and brokers, who sell to consumers, but do not carry stocks, nor from a manufacturer who sells to such lumber commission merchants, agents, or brokers."

Article 2 of said constitution provides as follows:

"The object of this association is and shall be to secure, and disseminate among its members, any and all legal and proper information which may be of interest or value to any member or members thereof, in his or their business as retail lumber dealers, and to carry into actual effect our 'Declaration of Purpose.' "

Article 3 of said constitution provides as follows:

"Section 1. No rules, regulations, or by-laws shall be adopted in any manner stifling competition, limiting production, restraining trade, regulating prices, or pooling profits.

"Sec. 2. No coercive measures of any kind shall be practiced or adopted towards any retailer, either to induce him to join the association, or to buy or refrain from buying of any particular manufacturer or wholesaler. Nor shall any discriminatory practices on the part of this association be used or allowed against any retailer for the reason that he may not be a member of the association, or to induce or persuade him to become such member.

"Sec. 3. No promises or agreements shall be requisite to membership in this association, save those provided in these 'Articles of Association and Declaration of Purpose,' nor shall any members be restricted to any particular territory, but may compete any and everywhere."

Article 7 of the constitution provides as follows:

"Section 1. *Report of Secretary.*—Any member of this association having cause of complaint against a manufacturer or wholesale dealer, or his agents, because of shipment to a consumer, shall notify the secretary of this association in writing,

giving as full information in reference thereto as practicable, such as date or dates of shipment and arrival, car number and initials, original point of shipment, names of consignor and consignee, the purpose for which the material was or is to be used, and such other particulars as may be obtainable. Such notice must be sent, with or without information in detail, within 30 days after the receipt of shipment at point of destination, and no notice shall be filed of any such sale or shipment occurring within 50 days after the first issue of membership list succeeding the acceptance of his application. Upon receipt of such notice, the secretary shall first ascertain whether or not the complaining member carries a stock commensurate with the demands of his community, and, if he finds that such stock is not carried, he shall ignore the complaint, unless upon application of such complaining member the executive committee shall reverse his finding; but, if he find that such stock is carried, he shall then notify the manufacturer or wholesaler that the rules of this association do not allow its members to buy from those manufacturers and wholesalers who sell to consumers, and unless such manufacturer or wholesaler shall satisfy the secretary that the complaint is not well founded the secretary shall report the facts to the executive committee, and upon the approval of his finding by a majority of the executive committee the secretary shall then notify the members of this association of such sale, and they shall discontinue to buy from such manufacturer or wholesaler until notified by the secretary that such wholesaler or manufacturer does not sell to consumers where there is a retail dealer who carries a stock commensurate with the demands of his community; but this section shall not apply in cases where the business methods or financial condition of such retailer will not justify a manufacturer or wholesaler in dealing with him. Under no circumstances shall the secretary enter into any agreement with a manufacturer or wholesaler that any one of the association members will deal with him, nor shall he in any case exact a promise from the wholesaler or manufacturer that he will not

sell to consumers, nor shall any result other than that of the members refusing to buy from any such manufacturer or wholesaler follow from the steps taken as hereby provided.

"Sec. 2    The foregoing provisions shall apply in reported cases of lumber commission merchants, agents, and brokers who sell to consumers, but do not carry stock, and as against the manufacturers who sell to such commission merchants, agents, or brokers.

"Sec. 3.    Each member, when he joins this association, and once each year thereafter, and oftener if the secretary shall request it, shall furnish the secretary a list of those manufacturers and wholesalers, and their agents, from whom he makes purchases of lumber and other building materials."

Thereupon, on November 19, 1906, the attorney-general, in the name of the state, filed a bill, in which he set out the foregoing facts, and alleged that said association was acting in violation of chapter 145, §§ 5002–5021, Code 1906, to wit, the chapter on "Trusts and Combines," showing that said association was a trust or combine in restraint of trade, and intending to hinder competition in the sale or purchase of a commodity, contrary to the provisions of said chapter.    Defendant answered, admitting all the substantial facts set out in the bill, but denying that its association was an unlawful combination or conspiracy, either in restraint of trade or in violation of any other provision of said chapter.    After hearing the cause on bill and answer, the chancellor in the court below held that the association was in violation of law, and granted a perpetual injunction, ordering that it be dissolved, and enjoining the further operation of said organization; and from this decree the defendant appealed.

We have each of us carefully read the able arguments and laboriously reviewed the mass of authorities cited by counsel in this case.    It is indisputable that a line of the older authorities, commencing with the *Bohn case,* 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319, and ending with the

*Montgomery Ward case* (C. C. A.) 150 Fed. 413, hold that at common law, and under the particular statutes therein construed, it is lawful for retailers to combine and agree not to purchase from wholesalers who sell direct to consumers, so long as they confine themselves to a simple withdrawal of their own patronage, without resorting to any agreement with the wholesaler direct, or threats, or fines, or other direct coercive measures.    These courts base their decisions upon the theory that such a combination is a legitimate protective and defensive measure, and that, since it is perfectly lawful for each individual retailer to withdraw his patronage from a wholesaler at any time and for any cause, it is equally lawful for them to combine to do what each might lawfully do individually.    But the courts of Indiana, Georgia, Nebraska, and Tennessee, and other states, have expressly repudiated the grounds upon which the former decisions were rested, and declare the doctrine therein announced, that what one may lawfully do any number may combine to do, to be untrue and unsound, and these decisions cite many instances where the vice and harm lie in the combination alone.

It was said in *Bailey v. Master Plumbers' Ass'n,* 103 Tenn. 99, 52 S. W. 853, 46 L. R. A. 561, that "it is entirely true, as in effect observed in *Macauley Bros. v. Tierney,* 19 R. I. 255, 33 Atl. 1, 37 L. R. A. 455, 61 Am. St. Rep. 770, and in *Bohn Mfg. Co. v. Hollis,* 54 Minn. 223, 55 N. W. 1119, 40 Am. St. Rep. 319, *sub nom. Bohn Mfg. Co. v. Northwestern Lumbermen's Ass'n,* 21 L .R. A. 337, that in the first instance each member of the association had a perfect legal right to buy material and supplies exclusively from any dealer or dealers he might choose, and each dealer had an equal right to select members for his customers, and to confine his sales to them only.    These were inherent rights, which no competitor was authorized to dispute, and no court empowered to control or curtail.    But, in our opinion, it does not follow, from this undoubted freedom of individual member and of individual dealer, that all of the mem-

bers may, as ruled in those cases, lawfully enter into a general and unlimited agreement, in the form of by-laws, that they and all of them will make their purchases from only such dealers as will sell to members exclusively. The premise does not justify the conclusion. The individual right is radically different from the combined action. The combination has hurtful powers and influences not possessed by the individual. It threatens and impairs rivalry in trade, covets control in prices, and seeks and obtains its own advancement at the expense and in the oppression of the public. The difference in legal contemplation between individual right and combined action in trade is seen in numerous cases. Any one of several commercial firms engaged in the sale of India cotton bagging had the right to suspend its sale for any time it saw fit. Yet an agreement between all of them to make no sales for three months without the consent of the majority 'was palpably and unequivocally a combination in restraint of trade.' *India Bagging Association v. Kock,* 14 La. Ann. 164. Any one of several companies had the right to sell the whole or only a part of its output to only such persons, in only such territory, and at only such prices, as it pleased; yet it was inimical to the interest of the public and unlawful for them to combine and agree that those matters should be determined and controlled by an agency jointly created for that purpose. This latter view commends itself in our judgment, and appears to be founded upon sound reason and just observation."

Again, it is said that it must appear certain that the means adopted by the retailers will be effective, and that as a necessary result of their action competition will be stifled and the freedom of trade restrained. This argument has met with favor with some courts, in construing the common law and particular statutes. But we take it that the Legislature of this state must have had in view all of these various and vexing questions, and sought to set them at rest in the plain and explicit language used therein. Under our statute, which provides that a combination "intended to hinder competition in . . . the sale or purchase of a commodity shall be a criminal conspiracy," it is un-

important to consider whether the means adopted are calculated to be effective or not.   The vital question is the design, the purpose, the intent of the combination; and it is likewise unimportant to consider whether the means adopted be peaceable and otherwise lawful, if the purpose and intent of the combination be to accomplish the unlawful object.

Applying these principles to the instant case, it is plain that the express and avowed object and purpose of this combination was to prevent the wholesaler from competing with the retailer in selling to the consumer.   Nor is this avowed purpose confined to a prevention of what is sometimes called "unfair" competition, but to any and all competition of every sort.   So far as these retailers could prevent, it was their purpose and intent, if language means anything, to deter the wholesaler from competing with the retailer in selling to the consumer at any time, in any place, and at any price, by a threat of the withdrawal of their trade.   This, we believe, is directly in violation of the plain letter of the statute.   We can conceive how "unfair" competition by the wholesaler with the retailer might, under certain circumstances, destroy the retailer, to the ultimate detriment of the public, thus directly stifling competition.   However, we have no such case before us, but only the case of a combination intended to destroy all competition by the wholesaler with the retailer, whether fair or unfair.   But, even if the former case were here presented, it is not for the retailer, nor perhaps for this court even, to undertake to say what is an unfair competition, since the statutes of 1906 (Code 1906, § 5002) make no exception, and no such distinction appeared until the Legislature of 1908 (Laws 1908, p. 124, c. 119) so amended the act of 1906 as to itself define what was unfair competition, and declared a penalty therefor, thus making clear the purpose of the Legislature to require all persons to look to the law for protection against unfair competition, rather than to their own efforts and combinations, and to look to the law to define and declare what shall be unfair competition, rather than permit the courts or the parties in interest so to do.

It is further urged that this combination is not inimical to public welfare, and, therefore, not unlawful.   In the case of *Barataria Canning Company v. Joulian,* 80 Miss. 555, 31 South. 961, it was distinctly held that the words "inimical to the public welfare" are not an added element of definition attached to each of the definitions already given in the separate sections of this statute, but that the offense is complete when shown to come within the terms of any section of the statute, as thereby the Legislature, in whom the discretion is vested, by its very declaration determines said act to be inimical to the public welfare.

Finally, it is urged that the very existence of the retailer depends upon such combinations.   This appeal is one to be made to the Legislature.   But we cannot think that even as an economic proposition it is sound.   The retailer has not lived and grown and thrived for these many hundred years without such factitious aids, to at last succumb to such fortuitous circumstances.   His right to exist rests upon foundations.   As long as he continues to faithfully serve the convenience and necessities of the people, as he has in the past, he need have no fear of permanent harm from any manner of competition with the wholesaler within the law as it is now written, but he may be expected to continue to live and flourish by virtue of his own sturdy, individual self-reliance, cultivated in the benign atmosphere of unrestrained freedom of trade, and the beneficient influences of a fair and healthy competition.

It appearing to us that the plain purpose of the instant association is to stifle competition between wholesaler and retailer in dealing with the consumer, and that such a combination, with such an express and avowed purpose, is directly in violation of both the letter and the spirit of the statute above referred to, which statute makes no distinction between classes and kinds of competition which it seeks to preserve, and the decision of the chancellor being in conformity with this view, the decree of the lower court is therefore *affirmed.*