STATE OF NEBRASKA v. JESS B. HELDENBRAND.

FILED JUNE 19, 1901. No. 11,817.

1. **Statute**: CONSTITUTION. Section 9, chapter 12, Compiled **Statutes**, is not violative of section 3, article 1, of the constitution, which decrees that "no person shall be deprived of life, liberty or property, without due process of law."

2. **Oral Evidence in Criminal Case:** ANTE-CONSTITUTIONAL RULE. Prior to the adoption of the constitution no person had the inherent right to establish his defense in every instance by oral evidence.

3. **No Vested Right in Common Law.** There is no vested right in any rule of the common law.

4. **Rule of Evidence:** LEGISLATIVE POWER. The legislature may change the rules of evidence.

5. **Statute:** PUBLIC POLICY. A statute will not be declared void as against public policy, since such statute, when duly enacted, is the expressed public policy of the state upon that subject.

6. **Constitution:** BILL: COMPREHENSIVE TITLE. The constitution does not prohibit the legislature from adopting comprehensive titles to bills.

7. **Title Broader Than Act.** A law will not be declared unconstitutional merely because the title is broader than the body of the act.

8. **Act:** TITLE. The title of the act of the legislature of 1877 (Session Laws, 1877, p. 5), "to prevent the fraudulent transfer of personal property," with sufficient clearness indicates the subject of the proposed legislation.

ERROR from the district court for Dawson county. Tried below before SULLIVAN, J. *Exceptions sustained.*

*James H. Van Dusen, W. A. Stewart, Warrington & Stewart* and *H. M. Sinclair,* for the state.

*George C. Gillan* and *E. A. Cook, contra.*

NORVAL, C. J.

An information was filed in the court below charging one Jess B. Heldenbrand with violating section 9, chapter 12, Compiled Statutes, by selling mortgaged personal property without the written consent of the owner and holder of the debt secured by the mortgage. A demurrer to the information was interposed by defendant, which was sustained by the court, and the prosecution dismissed. The county attorney has brought the record here under the provisions of section 515 of the Criminal Code.

In 1877 the legislature passed an act "To prevent the fraudulent transfer of personal property." Session Laws,

1877, p. 5. This act made it a felony to sell, transfer or dispose of personal property covered by a mortgage during the existence of the lien or title created thereby without the consent of the mortgagee. The legislature of 1889 amended this statute so as to read as follows: "That any person, who after having conveyed any article of personal property to another by mortgage, shall, during the existence of the lien or title created by such mortgage, sell, transfer, or in any manner dispose of the said personal property, or any part thereof so mortgaged to any person or body corporate, without first procuring the consent in writing of the owner and holder of the debt secured by said mortgage, to any such sale, transfer or disposal, shall be deemed guilty of a felony, and upon conviction thereof shall be fined in any sum not less than one hundred dollars, or imprisoned in the penitentiary, for a term not less than one year, nor more than ten years, or both fine and imprisonment at the discretion of the court." Session Laws, 1889, ch. 35. This amendatory act is carried into the Compiled Statutes as section 9, chapter 12. The district court held that this act, so far as it declared it a crime for the mortgagor to sell the mortgaged chattels "without the consent in writing" of the owner of the debt, was an attempt to deprive a person charged with violating the act of the right to adduce oral testimony in favor of his innocence, and for that reason was violative of section 3, article 1, of the constitution of this state. Further, that the act attempted to create a crime where no criminal intent exists, and is against public policy and void. There are other questions argued by counsel.

We think the first reason assigned not tenable. Section 3, article 1, of the constitution reads as follows: "No person shall be deprived of life, liberty or property, without due process of law." It is argued that, as a person charged with this offense must, to establish his innocence, prove that he had the written consent of the owner of the debt,—and in such case the writing itself would

be the best evidence,—he would be deprived of a constitutional right, it being assumed that at the time the constitution was adopted a person accused of crime had an inherent right in all instances to establish his defense by oral evidence. Had a person at such time such right? Manifestly not. A person charged with violating a law requiring a license must produce his license on trial, if charged with doing the business requiring a license, or account for his failure to produce it. One charged with forgery, if his defense consists of an admission that he affixed the signature which he is accused of falsifying, but the act was authorized by a written power of attorney, must produce the paper writing, or account for its absence. In many actions under the statute of frauds, or the statute of limitations, causes of action or defenses must be supported by paper writings. Many other instances may be readily recalled by the curious wherein both civil and criminal actions, causes or defenses must be made out by writings. It can not then be said that it was the intention of the constitution builders that in all cases, either civil or criminal, the defendant should have the right to offer oral evidence in his defense. The term "due process of law" employed in that section of the constitution can not then be construed to imply an inherent right on the part of litigants to offer oral evidence in support of their causes of action or defenses. If this were not so, then, in the language of counsel representing the state, the following results would follow: "There could be no amendments to the law; the legislature could make no new laws, especially those creating new and different offences; the legislature could not regulate or change the procedure in criminal cases; could not prescribe rules of evidence; in short, could do nothing except those things especially mentioned or granted to it by the constitution." Manifestly, this can not be the law. The constitution did not have the effect, on its adoption, to petrify the social structure. The purpose or intent of its adoption was not to preclude legislation, except in certain

specified instances, where the power of the legislature for harm is expressly and impliedly restricted. It was not intended that the common law should thenceforth continue to the end of time, unaltered by legislative action. If such had been the intention, a legislative branch of the state government would have been a superfluity. One of the main purposes for which that branch of government is created is that the common law may from time to time be changed or abrogated in those instances wherein, by reason of changed social conditions, or other reasons, it may become ineffectual for the preservation of public or private rights. "A person has no property, no vested interest, in any rule of the common law." *Munn v. Illinois,* 94 U. S., 113, 134. Neither is there such a thing as a vested right in any particular remedy. Plainly, also, rules of evidence may be as readily changed as rules of conduct. The constitution did not affect the right of the legislature to change such. It found them in a certain condition, and left them to be changed by the legislature as it might see fit, so long as no prohibition of that instrument was infringed. It is neither expressed nor implied therein that rules of evidence shall not be changed or abrogated; neither is it expressed or implied that in all cases, either criminal or civil, persons shall have the unimpeded right to establish their contentions by oral evidence in the courts.

The law attacked prohibits a mortgagor from disposing of the mortgaged property without the consent in writing of the owner or holder of the debt. Such consent is essentially in the nature of a license. When granted, the mortgagor may lawfully do what without it is forbidden. Individuals are prohibited from disposing of certain articles of merchandise, unless authorized in writing by the proper authorities so to do. A person accused of violating a law requiring a license for the sale of his wares, establishes his innocence by producing the written consent of the proper officials. In the case at bar, the accused is prohibited from disposing of this property very much as are individuals prohibited from dealing

State v. Heldenbrand.

in certain commodities. He can establish his innocence
in very much the same manner as can they theirs. Why,
then, is not such requirement due process of law? There
are no unnecessarily harsh restrictions attached to it.
As well might the liquor dealer or the auctioneer or the
drayman complain of the hardships attached to the car-
rying on of their particular employments? We think
there is no doubt that it is due process of law. Moreover,
the statute under consideration does not prevent a person
prosecuted for violating its provisions from introducing
oral evidence in his defense, as he may show by such
testimony that he did not dispose of the property, that
he never gave the mortgage, or that the debt had been
fully paid, and the lien created by the mortgage dis-
charged.

It is also urged that the law is against public policy,
because it is not required to be proved or pleaded that
the accused in such a case was actuated in disposing of
the property by an intent to defraud the owner or holder
of the debt. We shall not stop to inquire into the mean-
ing of the term "public policy," although we should go
far to find better evidence of the public policy than acts
of the legislative body. If it be true that moral turpitude
must accompany an act in order to make it a crime, then
a vast body of laws, those which are merely *mala pro-
hibita*, not *mala per se*, must likewise be swept from the
statute books. So long as there is no constitutional in-
hibition, the legislature may make any act a crime,
whether moral crookedness be involved in such act or
not. When defendant sold this property without the
written consent of the owner of the debt, if he is guilty
of such act, the intent to violate a law was present, quite
as certainly as it would be had he merely shot a quail in
the closed season. In neither of the acts would moral
turpitude be involved, but in each a criminal act would
be committed, for in doing the act is implied the intent
to defy the "thou shalt not" of the legislature. *State v.
Hughes*, 38 Nebr., 366. Whether or no this act was a wise

rule of action, is not for this branch of government to decide. There being no restriction, express or implied, in the fundamental law, upon the legislature in such instance, its expediency was solely for the determination of that body, not of this.

Again, it is urged that the law is unconstitutional, for the reason that the act of 1877 was not clearly expressed in its title, and that the present section, which is amendatory of that act, is not germane to the subject-matter of the original act. The title of the act of 1877 is "An act to prevent the fraudulent transfer of personal property." The title of the act is extremely broad. Indeed, it is much more comprehensive than the act itself. The latter refers solely to transfers by mortgagors, whereas under the title all transfers of personal property, the effect of which would be to work a wrong or fraud upon some other party, might have been included. A law is not necessarily void because its title is comprehensive. *Paxton v. Farmers Company,* 45 Nebr., 884; *State v. Bemis,* 45 Nebr., 724; *Van Horn v. State,* 46 Nebr., 62. A title may be general, yet not necessarily void on that account. "An act to amend the Code of Civil Procedure" has been upheld by this court. *Gatling v. Lane,* 17 Nebr., 80. The mere fact, however, that the legislature chose a title much more comprehensive than the matter covered by the body of the act can not be objectionable. If the title were more narrow than the act, then complaint might well be made that the constitutional inhibition was invaded. The title in question is doubtless not so appropriate an one as might have been chosen, but we think it fairly indicates the scope and purpose of the act, and that a person reading it might expect legislation of this character in the body of the act. *State v. Bemis, supra.* The usual consequence of transfers of property covered by chattel mortgage is to work a wrong or fraud upon the person holding the mortgage, for, being of a movable nature, it is difficult to trace it from one person to another. A transfer of cattle by a mortgagor resident in Nebraska to a

person resident in Chicago, London or Berlin would certainly be, in effect, a fraud upon the holder of the debt, whether the mortgagor intended it so to be or not.

Some other questions of law are argued in the able brief of defendant, which, in the interest of brevity, we do not deem it necessary to discuss at length. We have examined them with care, and are of opinion that they are not well taken. The exceptions are sustained.

EXCEPTIONS SUSTAINED.