Knight & Jillson Co. *v.* Miller—172 Ind. 27.

KNIGHT & JILLSON COMPANY ET AL. *v.* MILLER.
[No. 21,187. Filed March 16, 1909.]

1. PLEADING.—*Complaint.*—*Theory.*—*How Determined.*—*Appeal.*— The Supreme Court, in determining the theory of a case, will consider the briefs, the entire record, the theory upon which the case was tried, and the general scope of the pleadings. p. 31.

2. PLEADING.— *Complaint.* —*Conspiracy.*— *Trusts.*— A complaint alleging that defendants conspired to refuse to sell to the plaintiff any plumbing materials, to his damage, and demanding a judgment for attorneys' fees and damages, and praying an injunction, is based upon the anti-trust act of 1899 (Acts 1899, p. 257, §§1-4, §§3884-3887 Burns 1908). p. 32.

3. CONSTITUTIONAL LAW.—*Statutes.*—*Title Broader than Purview.* —An act is not invalid under the constitutional provision (Art. 4, §19), requiring that the subject-matter of an act shall be expressed in the title, because the title is more comprehensive than the purview of the act. pp. 33, 40, 43.

4. CONSTITUTIONAL LAW.—*Anti-Trust Statutes.*—*Contracts.*—*Intention.*—Although the title to the anti-trust act of 1899 (Acts 1899, p. 257) declares the subject-matter of the statute to be the prohibition of contracts or combinations "intended to prevent free competition in business," the body of the act, in defining the contracts and combinations prohibited, need not designate them as "intended to prevent free competition in business," the necessary effect thereof being to prevent such competition. pp. 34, 39, 41, 42.

5. CRIMINAL LAW.— *Violation of Statute.*—*Intent.*—Where the offense committed consists in doing a certain thing prohibited by statute, the only intent necessary to be shown, in order to convict, is the intent to do the prohibited thing. p. 34.

6. CONSTITUTIONAL LAW.— *Contracts.*— *Regulation of.*— *Police Power.*— Under the police power, for the protection of health, morals, safety and general welfare, the states may restrain the general right of contract. p. 34.

Knight & Jillson Co. *v.* Miller—172 Ind. 27.

7. CONSPIRACY.—*Results of Acts.—Intention.*—An intention to accomplish certain results will be presumed where such results certainly follow from the acts done. pp. 34, 36, 42.

8. CONTRACTS.—*Object.—Legality of.*—The legality of the object of a conspiracy is determined regardless of the intent with which it is performed. p. 34.

9. CONTRACTS.—*Proof of.*—At the common law proof of a combination was sufficient, in conspiracy cases, without proof of any overt act, the real question being whether the combination had an injurious tendency, and not whether the intent was evil. p. 35.

10. CONSTITUTIONAL LAW.— *Statutes.— Title.—Anti-Trust.—Intention.*—The title of the anti-trust act of 1899 (Acts 1899, p. 257), prohibiting contracts and combinations in restraint of trade, would be sufficient if the clause "intended to prevent free competition in business" were omitted, the suppression of competition being the necessary consequence of such contracts and combinations. p. 35.

11. CONTRACTS.—*Whether in Restraint of Trade.—Question for Court.*—Whether a contract is in restraint of trade is a question for the court. p. 35.

12. CONSTITUTIONAL LAW.—*Statutes.—Declaratory of Common Law.—Intent.*—The anti-trust statute (Acts 1899, p. 257, §§3884-3888 Burns 1908), being declaratory of the common law, and adding civil and criminal penalties thereto, is not invalid for its failure to specify that the prohibited contracts must be intended to prevent competition, where their effect must be to prevent competition. p. 35.

13. CONSTITUTIONAL LAW.— *Statutes.— Declaratory.— Self-executing.*—Constitutional provisions, or statutes, which are declaratory of the common law, are self-executing. p. 36.

14. CONSTITUTIONAL LAW.—*Statutes.—Anti-Trust.—Public Policy.*—The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908) prohibiting the making of contracts or combinations in restraint of competition, cannot be held invalid because of inexpediency, or because it is unwise. p. 36.

15. COMMERCE.— *Contracts.— Intention.— Restraints on Competition.*—The courts will conclusively presume that it was the intention of parties to prevent competition, where the contracts executed must necessarily have that effect. p. 36.

16. COMMERCE.—*Contracts.—Suppression of Competition.—Public Policy.—Police Power.*—Contracts which have a tendency to suppress competition are contrary to public policy and are subject to public control under the police power. pp. 37, 43, 48.

17. CONSPIRACY.—*Criminal.—Civil.*—At the common law conspiracies in restraint of competition were indictable, and a cause of action arose in favor of those injured thereby. p. 39.

18. CONSTITUTIONAL LAW.—*Statutes.—Title.*—It is requisite only that the subject-matter of a statute be expressed in the title, incidental matters connected therewith being unnecessary therein. p. 39.

19. CONSTITUTIONAL LAW.—*Anti-Trust Statutes.—Intent.*—In the passage of the anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908) it will be presumed that the legislature had in mind the legal character of the prohibited contracts and combinations, and the legal presumptions of suppressing competition arising therefrom.    p. 40.

20. CONSTITUTIONAL LAW.—*Statutes.—Title.—Penalties.*—An act which omits to mention penalties in the title is not invalid because penalties are provided for in the purview thereof.    p. 42.

21. CONSTITUTIONAL LAW.—*Anti-Trust Statutes.—Due Process of Law.*—The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908), prohibiting contracts and combinations in restraint of trade, is not in violation of the federal Constitution guaranteeing due process of law, since such provision does not impair the police powers of the states.    p. 43.

22. CONSTITUTIONAL LAW.—*Confiscation.—Anti-Trust Statutes.— Equal Protection of Laws.—Class Legislation.*—The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908), prohibiting contracts and combinations in restraint of trade, does not authorize the confiscation of property, does not deny the equal protection of the laws, nor does it constitute class legislation.    p. 44.

23. CONSTITUTIONAL LAW.—*Regulation of Duties.—Police Power.*— The states, under the police power, may regulate the relative rights and duties of persons, individual and corporate.    p. 44.

24. CONSTITUTIONAL LAW.—*Anti-Trust Statutes.—Equal Protection.* —The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908), prohibiting contracts and combinations in restraint of trade, does not deny the equal protection of the laws.    p. 45.

25. CONTRACTS.—*Not to Engage in Business.—Monopolies.*—Contracts between a vendor and a vendee that the vendor shall not again engage, as the vendee's competitor, in the business, under certain restrictions, are lawful.    p. 47.

26. COMMERCE. — *Necessities. — Staples. — Plumbers' Supplies.* — Plumbers' supplies are staple commodities and constitute a necessity of life.    p. 49.

27. CONSTITUTIONAL LAW.—*Anti-Trust Statutes.—Natural Rights. —Equal Privileges.*—The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908), prohibiting contracts and combinations in restraint of trade, does not deprive persons of their natural rights, nor grant unequal privileges.    p. 49.

28. CONSTITUTIONAL LAW.— *Anti-Trust Statutes.— Classes.*— The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908),

prohibiting contracts or combinations for preventing competition in articles used by "any mechanic, artisan or dealer," cannot be questioned by a wholesaler on the ground that it does not include the "consumer." p. 50.

29. CONSTITUTIONAL LAW.—*Exorbitant Penalties.—Prevention of Resort to Courts.*—The anti-trust act of 1899 (Acts 1899, p. 257, §§3884-3888 Burns 1908), prohibiting contracts and combinations in restraint of trade, is not invalid on the ground that the penalties are so severe that parties will not resort to the courts for the determination of their rights. p. 50.

30. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 51.

From Superior Court of Marion County (68,324) ; *James M. Leathers,* Judge.

Suit by Joseph Miller against the Knight & Jillson Company and others. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Elmer E. Stevenson, D. P. Williams* and *Rowland Evans,* for appellants.

*Taylor, Woods & Willson,* for appellee.

MYERS, J.—Appellee instituted this action in the Superior Court of Marion County on December 13, 1904, by a complaint based on sections one and four of the conspiracy act of March 3, 1899 (Acts 1899, p. 257, §§3884, 3887 Burns 1908), charging that the defendants Knight & Jillson Company and the Central Supply Company, both domestic corporations located and doing business in Indianapolis, Indiana—the former a manufacturer, wholesaler and jobber of plumbing materials and supplies of every character, and the latter a wholesaler and jobber of plumbing materials and supplies of every character—and the Merchant Plumbers' Association, a domestic corporation of the city of Indianapolis—alleged to be formed for the purpose of preventing competition in the plumbing business in said city—contracted, conspired, combined and confederated together to prevent competition in the plumbing business, by suppressing competition among the members of the latter corporation,

whose membership is alleged to embrace practically all the merchant plumbers of that city, through and by means of prices fixed arbitrarily, and without regard to the supply and demand, by such association by means of fictitious, published price lists, though sales were made to members at from thirty to seventy-five per cent less than such lists, and by refusing to sell to those who were not members—who were thereby prevented from competing—and driving them out of business unless they became members of the association; that the two first named parties controlled the manufacture and sale of plumbers' supplies in said city, and were members of said plumbers' association; that said appellants refused to sell to the plaintiff, though the cash was offered, solely because he was not a member of said association, though a licensed plumber of that city and regularly engaged in the business, and that he could not obtain the supplies elsewhere. Appellant alleged special damages, prayed for a mandatory injunction to require said manufacturers and jobbers to sell to him for cash, at reasonable and customary prices, and demanded attorney's fees.

There was a special finding of facts practically following the allegations of the complaint, and conclusions of law stated. There was a decree on these conclusions, perpetually enjoining all the parties from refusing to sell, or inducing others not to sell, supplies to appellee for cash, at the usual and customary prices.

Error is here assigned separately by appellants that each of the conclusions of law is erroneous, and, upon motion for a new trial, that the decision is contrary to law, and 1. not sustained by sufficient evidence. Appellants assume that the action is based wholly upon the so-called anti-trust act of 1899, *supra.* This is denied by appellee, who claims that independently of that act the judgment can be upheld as a common-law action. We are therefore required to determine the theory of this suit according to the theory upon which it was presented to the trial court; and

in doing so, may look to the pleadings, the entire record, and briefs of counsel, and will construe the pleadings upon the theory most apparent, most clearly outlined by the facts stated, and according to their general scope and tenor. *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639; *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574; *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489; *Seymour Water Co.* v. *City of Seymour* (1904), 163 Ind. 120.

It will be noted that the complaint makes a demand for attorneys' fees and for damages. There could of course be no recovery of attorneys' fees upon a common-law action, but §3887, *supra,* provides for a recovery of said fees, and there was an award of $50 attorneys' fees. We think there can be no doubt, from that fact and from the general scope of the complaint, that the complaint was based upon the act cited.

The constitutionality of the act is challenged on the ground that the subject embraced in the body of the act is not expressed in the title. The constitutional provision (Const., Art. 4, §19) is that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be embraced in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The title and section one of the act (§3884, *supra*) are as follows: "An act to prohibit contracts or combinations of persons, firms or associations intended to prevent free competition in business, to provide for civil damages, penalties and punishment for violation, repealing all laws in conflict therewith. Section 1. That any person, firm or association of persons who shall make any contract or enter into any agreement or make any combination or enter into any arrangement, directly or indirectly, to induce, procure or prevent any wholesale or retail dealer in or manufacturer of merchandise or of supplies or of material or article in-

tended for trade or used by any mechanic, artisan or dealer in the prosecution of his business from selling such supplies to any dealer or to any mechanic or artisan; and that any dealer in or manufacturer of such supplies or material or article of trade or supplies or material to be used by any mechanic, artisan or dealer who shall be a party, directly or indirectly, to any such contract, combination or arrangement, or who shall upon the request of any party to any such contract, combination or arrangement refuse to sell such articles of trade, supplies or materials, or articles sold by any dealer or used by any mechanic, or artisan, to any such person or persons who may require them in the prosecution of their said business, for the reason that said dealer, mechanic or artisan is not a member of a combination or association of persons, shall be guilty of conspiracy against trade. And all such contracts, agreements, combinations or arrangements shall be void and of no effect whatever in law.'' The insistence here is that the words in the title, ''intended to prevent free competition in business,'' qualify and limit the words ''to prohibit contracts or combinations of persons, firms or associations,'' that they do not appear literally or in substance in the body of the act, and that, because the body of the act does not declare that the contracts, combinations, etc., shall be ''intended to prevent free competition in business,'' the act is invalid.

It is not contended that the act is broader than the title, but that the language of the title is not used literally or in substance in the body of the act on the subject of intention; in other words, that the act is not as broad as the title. Appellants are not in a situation to complain of the title of the act, because the act is not as broad as the title, if the act itself describes contracts or combinations which, in and of themselves by their formation, can have but one effect, namely, the prevention or tendency to prevent free competition. It is not necessary that the body

of an act shall declare that a thing shall be done with a specific intent, when the doing of that thing by the force of its character and effects discloses a situation upon which the law engrafts an intent and purpose, and which could have no other purpose; that is, contracts or combinations which could have no other effect than to restrain free competition, or which have such tendency, will be deemed to have been so intended, and that purpose need not be declared in the act. Where the necessary and immediate effect of a contract is to violate an act of congress (anti-trust act), and also to restrain and regulate interstate and foreign commerce, whether the design so to regulate was or was not in existence when the contract was entered into, is immaterial. *Addyston Pipe, etc., Co.* v. *United States* (1899), 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136.

Where the offense charged is the violation of a written statute, the only intent necessary to the commission of the offense is the intent to do the prohibited thing. 8 Am. and Eng. Ency. Law (2d ed.), pp. 290, 291; *Standard Oil Co.* v. *State* (1906), 117 Tenn. 618, 100 S. W. 705, 10 L. R. A. (N. S.) 1015; *State* v. *Missouri, etc., R. Co.* (1906), 99 Tex. 516, 91 S. W. 214.

In the reasonable exercise of the police power for the protection of the public health, morals, safety and welfare, states may restrain the general right of contract. *Standard Oil Co.* v. *State, supra; American Express Co.* v. *Southern Ind. Express Co.* (1906), 167 Ind. 292; *Adams Express Co.* v. *State* (1903), 161 Ind. 328.

An intention to accomplish certain results will be presumed where such results are the natural consequences that may reasonably be expected. *State* v. *Virginia, etc., Chemical Co.* (1904), 71 S. C. 544, 51 S. E. 455. The legality of an object is determined from the means used in accomplishing it, and is determinable regardles of the intent with which it is performed. *Runck* v. *Cloud* (1901), 8 Ohio N. P. 436.

The gravamen of the offense of conspiracy is the combination—and this is complete at common law by the combination itself—and it is unnecessary to prove any overt act done in pursuance of it. *People* v. *Sheldon* (1893), 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. 690. The material question is the injurious tendency, and not whether the intent is evil. *Anderson* v. *Shawnee Compress Co.* (1906), 17 Okla. 231, 87 Pac. 315, 15 L. R. A. (N. S.) 846; *Chesapeake, etc., Fuel Co.* v. *United States* (1902), 115 Fed. 610, 53 C. C. A. 256; *Heim Brewing Co.* v. *Belinder* (1902), 97 Mo. App. 64, 71 S. W. 691; *San Antonio Gas Co.* v. *State* (1899), 22 Tex. Civ. App. 118, 54 S. W. 289.

The title would have been sufficient if it had declared generally that it was an act to prohibit contracts in restraint of competition in trade, for such contracts could only be with the intent to restrain competition, and it would not be necessary to declare such intent. The thing itself speaks and characterizes the act. The act is no broader than the common law, except as in defining punishments provided, both of a civil and criminal character. The prohibition of contracts, combinations, agreements, etc., which from their character must have the effect of restraining competition, or which have such tendency, will be inferred as having such intent, and are certainly germane to an act, the subject of the title of which is "an act to prohibit contracts * * * to prevent free competition." Whether an agreement is in restraint of trade is a question of law for the court. *Houck* v. *Anheuser-Busch Brewing Assn.* (1895), 88 Tex. 184, 30 S. W. 869; *Cohen* v. *Berlin & Jones Envelope Co.* (1901), 166 N. Y. 292, 59 N. E. 906.

An act which is simply declarative of the common law, but imposes civil and criminal penalties, cannot furnish a ground for objecting to the substance of the act, which does not declare that it shall be done with an in-.

tent to restrain competition, when a thing in itself in its doing does restrain competition, or has a tendency to do so, and both at common law and by statute is prohibited. The prohibitive act supplies the intent, and would produce no other result than restraint of competition, or a tendency so to do, upon the well-established proposition that parties will be presumed to have acted with intent to produce the result which the nature of the act necessarily or reasonably does produce, or tends to produce, and this is true in civil as well as criminal instances. Lawson, Presumptive Ev. (2d ed.), 322.

When a constitutional provision or a statute is declarative of the common law, it is self-active. *Trust Co., etc., v. State* (1900), 109 Ga. 736, 35 S. E. 323, 48 L. R. A. 520.

It must follow, as a common-law maxim, that an act which prohibits certain things from being done, hurtful in themselves, must, if reasonable, though restrictive in character, and constitutional, be upheld. The courts can have no concern as to its expediency or wisdom. The act declares that certain things shall not be done. It is no broader than the common law, and it is not a question as to what has been done under it, but what might be done, and that feature of the question resolves itself into the proposition whether the legislature has the power to say that those defined things shall not be done, to which we advert later.

The act both prohibits and provides penalties, and goes as far as it is possible for an act to go, with respect to declaring the legislative intent as to prohibition and invalidity, and to make it self-active. In *Addyston Pipe, etc., Co., v. United States, supra,* Mr. Justice Peckham said on page 243: "It is useless for the defendants to say they did not intend to regulate or affect interstate commerce. They intended to make the very combination and agreement which they in fact did make, and they must be held to have intended (if in such case intention is of the least import-

ance) the necessary and direct result of their agreement." The established rule with respect to interstate and international commerce under the regulations of the federal government is precisely the rule in a state, with respect to business of a purely domestic character, and not impressed with the character of interstate or international commerce, and for the same reasons. *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 33 L. R. A. 213, 51 Am. St. 174; *Champer* v. *City of Greencastle* (1894), 138 Ind. 339, 24 L. R. A. 768, 46 Am. St. 390.

This power Judge Cooley calls the police or equivalent power. Cooley, Const. Lim. (6th ed.), 722. Noyes, Intercorporate Relations, §409, says: "Laws against combinations for the purpose of restricting production, maintaining prices or suppressing competition, have a relation to the end of all police regulations—the comfort, welfare or safety of society."

Mr. Justice Harlan, speaking for the majority of the court in *Northern Securities Co.* v. *United States* (1904), 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, said: "That to violate a combination such as the act of congress condemns, it need not be shown that the combination in fact results or will result in a total suppression of trade or in a complete monopoly, but it is only essential to show that by its necessary operation it tends to restrict interstate, or international trade or commerce, or tends to create a monopoly in such trade or commerce, and to deprive the public of the advantages that flow from free competition."

In *United States* v. *E. C. Knight Co.* (1895), 156 U. S. 1, 16, 15 Sup. Ct. 249, 39 L. Ed. 325, the court, speaking by Mr. Chief Justice Fuller, said: "Again, all the authorities agree that in order to vitiate a contract or combination it is not essential that its result will be a complete monopoly; it is sufficient if it really tends to that end and to deprive the public of the advantages which flow from free competition."

Combinations in restraint of competition are an acknowl-

edged subject of police regulation. Tiedeman, Police Powers, §96.

"Manufacturing or trading companies may also affect prices by joining together in forming a trust or other combination, and by making agreements in restraint of trade and commerce, which when carried out affect the interests of the public." *United States* v. *Trans-Missouri Freight Assn.* (1897), 166 U. S. 290, 322, 17 Sup. Ct. 540, 41 L. Ed. 1007.

At common law the test in every case is, whether the agreement claimed to be in restraint of trade is injurious to the public interests. "Courts will not stop to inquire as to the degree of injury inflicted upon the public; it is enough to know that the inevitable tendency of such contracts is injurious to the public." *Central Ohio Salt Co.* v. *Guthrie* (1880), 35 Ohio St. 666. The application of the rule does not depend upon the number of those who may be implicated, or the extent of space included in the combination, but upon the existence of the injury to the public. Mere territorial limits are not in all instances the controlling test of the legality of such contracts. All contracts which have a tendency to stifle competition are void as against public policy. *Consumers Oil Co.* v. *Nunnemaker* (1895), 142 Ind. 560, 51 Am. St. 193; *Jackson* v. *Stanfield* (1894), 137 Ind. 592, 23 L. R. A. 588; *Cleveland, etc., R. Co.* v. *Closser* (1898), 126 Ind. 348, 9 L. R. A. 754, 22 Am. St. 593; *Goldman* v. *Oppenheim* (1889), 118 Ind. 95; *Hunter* v. *Pfeiffer* (1886), 108 Ind. 197; *Elkhart County Lodge* v. *Crary* (1884), 98 Ind. 238, 49 Am. Rep. 746; *Nester* v. *Continental Brewing Co.* (1894), 161 Pa. St. 473, 29 Atl. 102, 24 L. R. A. 247, 41 Am. St. 894; *Leslie* v. *Lorillard* (1888), 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456; *More* v. *Bennett* (1892), 140 Ill. 69, 29 N. E. 888, 15 L. R. A. 361, 33 Am. St. 216; *Texas, etc., R. Co.* v. *Southern Pac. R. Co.* (1889), 41 La. Ann. 970, 6 South. 888, 17 Am. St. 445; *India. Bagging Assn.* v. *Kock & Co.* (1859), 14 La. Ann. 168; *Gibbs* v. *Consolidated Gas Co.* (1889), 130 U. S. 396,

9 Sup. Ct. 553, 32 L. Ed. 979; *State, ex rel.,* v. *Portland Nat. Gas Co.* (1899), 153 Ind. 483, 53 L. R. A. 413, 74 Am. St. 314.

The act under consideration defines certain things which shall not be done. They are each and all things which tend to stifle and restrain competition as a matter of law. At common law, conspiracy was indictable and the individual affected had a right of private action. 1 Hawkins, Pleas of the Crown (6th ed.), Ch. 72, §2; 4 Am. and Eng. Ency. Law, 609; Greenhood, Pub. Policy, 642; *State* v. *Stewart* (1887), 59 Vt. 273, 9 Atl. 559, 59 Am. Rep. 710.

The question then resolves itself into the proposition whether the body of the act, irrespective of its character and subject-matter, must, in order to be valid, declare that the inhibited contracts must be with intent to prevent competition. The title is quite general, and does not, as it need not, go into particularity. It is sufficient that the subject-matter and general character, and not all matters properly connected therewith, be expressed in the title, and that the general subject of the act be expressed, and is comprehensive enough to cover its provisions with reasonable precision and clearness, and is not calculated to mislead; the object of such provision being, of course, that extraneous subjects may not be injected, under cover of a misleading title, and also that legislation may not be hampered by tacking undesirable legislation to that which may be wise and beneficial as a condition of the enactment of the latter. *Swartz* v. *Board, etc.* (1902), 158 Ind. 141; *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 300; *Lewis* v. *State* (1897), 148 Ind. 346; *Bitters* v. *Board, etc.* (1881), 81 Ind. 125; *State, ex rel.,* v. *Sullivan* (1881), 74 Ind. 121; *Shoemaker* v. *Smith* (1871), 37 Ind. 122; *Bright* v. *McCullough* (1866), 27 Ind. 223; *Hingle* v. *State* (1865), 24 Ind. 28; *Robinson* v. *Skipworth* (1864), 23 Ind. 311. Nor is an act invalid because it

includes details germane to the title, but not mentioned in the title. *Pittsburgh, etc., R. Co.* v. *Montgomery, supra.*

We must assume that the legislature had in mind the common-law prohibitions of such contracts or combinations, with the legal presumptions and the presumptions of fact which arise from combinations which tend to stifle or restrain competition, viz., that it will be presumed · that they are so intended. In *State, ex rel.,* v. *Schlitz Brewing Co.* (1900), 104 Tenn. 715, 728, 59 S. W. 1033, 78 Am. St. 941, the supreme court of Tennessee, under a constitutional provision quite similar to our own, says: "The title of a legislative bill may be either narrow and restricted or broad and general, as the members of the General Assembly may prefer, and whether it be in one form or the other in a given instance, all legislation that is germane to the subject expressed in the title is within the title and permissible under it; but of course much that might be germane under the latter class of titles could not be so under the former. * * * In every instance the enactment must come within the title, but in no case is it required to cover the whole domain within the title. The constitution forbids that an enactment shall go beyond the limits of its title, but there is no requirement that it shall completely fill it." To the same effect is *Boyer* v. *Grand Rapids Fire Ins. Co.* (1900), 124 Mich. 455, 83 N. W. 124, 83 Am. St. 338: "The title of an act is now so associated with it in the process of legislation that when, in performing its constitutional functions, it affords means of determining the legislative intent, in cases of doubt its help cannot be rejected for being extrinsic and extra-legislative. The language of an act should be construed in view of its title and its lawful purposes; broad language should be confined to lawful objects." Sutherland, Stat. Constr., §211. And see *State, ex rel.,* v. *Roby, supra; Garrigus* v. *Board, etc.* (1872), 39 Ind. 66.

While it is true that the act is penal in its nature, it is scarcely more so than the acts which it prohibits are at com-

mon law, and is fairly within the intent stated in the title. The title and the statute itself are to be taken together, and we think there can be no doubt that the statute is within the spirit of the title and the object declared therein, if not within the letter; and, if so, it is sufficient. *Hawaii* v. *Mankichi* (1903), 190 U. S. 197, 23 Sup. Ct. 787, 47 L. Ed. 1016.

The fact that the act is both penal and prohibitory in character, and requires strict construction, does not change the rules of construction, and the doctrine does not apply to extend or expand beyond the scope of the title the general words used in the body of an act, or to limit them within the subject of the title so as to make the act invalid; and the fact that the legislature chose a title more comprehensive than the letter of the act, when the act from its nature embraces the subject and spirit of the title, does not invalidate the act, for the intent to violate the law is present when the prohibited act is committed. *State, ex rel.,* v. *Roby, supra; State* v. *Heldenbrand* (1901), 62 Neb. 136, 87 N. W. 25, 89 Am. St. 743.

The words of the title, "intended to prevent free competition in business," are nothing more than a legal definition of an unlawful combination at common law; a declaration of the effect of the prohibited combinations, as a matter of law, as to which the law supplies the intent. A somewhat analogous case is *Barataria Canning Co.* v. *Joulian* (1902), 80 Miss. 555, 31 South. 961. There a section of the act defined a criminal conspiracy, and closed with the words: "And is inimical to the public welfare, unlawful and a criminal conspiracy." These were held to be "a mere declaration of a trust, not an added element of definition attaching to each of the definitions already perfectly given." It was there insisted that it was only combinations, etc., inimical to "the public welfare" which were prohibited. It is here contended that the act is invalid because it fails to use the language of the title as to the subject of the intent. The language of the act defines combinations,

etc., which in and of themselves tend to restrain competition, and the combination implies the intent which the title covers as fully as if the words were in the act, and intent would not be further defined or added to by the use of the words "intended to prevent." In *Republic Iron & Steel Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136, it was held that the penalty clause of an act was not invalid by reason of its not being mentioned in the title. If upon the face of an agreement its direct effect or tendency is to stifle competition or restrain trade, no inquiry will be made into motives or intent; the law supplies these. *United States* v. *Joint Traffic Assn.* (1898), 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259.

Looking to the section before us, does it appear upon its face that the doing of the things prohibited thereby have a direct tendency, if done, to restrain free competition? If so, the law supplies the intent of the title, and this, we think, is clearly so. The fact that the act is penal in character does not change the result; for, as we have seen, it is criminal at common law. It is not a new offense. Every combination declared illegal by the act was equally so at common law before its passage. It is not necessary to show that the immediate results of an act are to suppress competition, or to create a complete monopoly. It is sufficient if they tend to bring about those results. *State, ex rel.,* v. *Portland Nat. Gas Co., supra; Northern Securities Co.* v. *United States* (1904), 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679; *Addyston Pipe, etc., Co.* v. *United States* (1899), 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; *United States* v. *E. C. Knight Co.* (1895), 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; *Central Ohio Salt Co.* v. *Guthrie* (1880), 35 Ohio St. 666, 672; *People* v. *North River, etc., Refining Co.* (1889), 54 Hun 354, 377, 7 N. Y. Supp. 406, 5 L. R. A. 386; *Continental Wall Paper Co.* v. *Lewis Voight & Sons Co.* (1909), 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486.

As we have said, the title would have been sufficient if it

had simply declared it to be an act to prohibit contracts, combinations, etc., in restraint of competition, and the fact that the title is broader than the act can have no effect upon the validity of the act itself, when the body of the act describes contracts or combinations which from their force or character have the effect or tendency of prohibiting competition, for such contracts or combinations are in and of themselves unlawful, and the law supplies the intent, and will not inquire into the extent of the tendency, but puts the ban on the act, upon the ground of its tendency, and does not await the accomplished fact, nor does it depend upon the fact as to whether a complete monopoly results.

The very existence of a power to restrain competition is a restraint on competition. *United States* v. *Joint Traffic Assn., supra; United States* v. *Trans-Missouri Freight Assn., supra; Pearsall* v. *Great Northern R. Co.* (1896), 161 U. S. 646, 16 Sup. Ct. 705, 40 L. Ed. 838.

Neither does the statute conflict with the 14th amendment to the federal Constitution, as depriving appellants of their property without due process of law, or as a denial of the equal protection of the laws. It has been held, over and over, that the exercise of a police regulation or a power under the general-welfare clause of the Constitution, such as restraining monopolies, is not a denial of due process of law. Regulation in reason is not a denial of due process of law, and this may be true either as to special occupations or as to general classes of business. Notable instances are: *Slaughter House Cases* (1872), 16 Wall. 36, 21 L. Ed. 394. An elevator case: *Munn* v. *Illinois* (1876), 94 U. S. 113, 24 L. Ed. 77. Oleomargarine cases: *Powell* v. *Pennsylvania* (1888), 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253; *Plumley* v. *Massachusetts* (1894), 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223. Laundry cases: *Barbier* v. *Connolly* (1885), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Soon Hing* v. *Crowley* (1885), 113 U. S. 703, 5

Sup. Ct. 730, 28 L. Ed. 1145. Regulating the protection of gas-wells: *Ohio Oil Co.* v. *Indiana* (1900), 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729. Regulating employment in mines: *Holden* v. *Hardy* (1898), 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; *Hancock* v. *Yaden* (1890), 121 Ind. 366, 6 L. R. A. 576, 16 Am. St. 396; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319.

The 14th amendment does not impair the police powers of the State or analogous powers. *Slaughter House Cases, supra; Powell* v. *Pennsylvania, supra; Budd* v. *New York* (1892), 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247; *Barbier* v. *Connolly, supra.*

The statute undertakes no plan of confiscation, but the question of fact is triable as other civil actions under the established rules of procedure, wherein parties charged have a right to notice and to be heard, under the general rules which govern society, and according to maxims prescribed for the class to which the one dealt with belongs. *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 18 L. R. A. 729; *Pittsburgh, etc., R. Co.* v. *Backus* (1893), 133 Ind. 625; *Hovey* v. *Elliott* (1897), 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215; 2 Story, Constitution (5th ed.), §1945. Nor is the equal protection of the laws denied. It is not a denial of the equal protection of the laws at the common law, when individuals or associations are prohibited from doing that which is unlawful in itself, nor are appellants singled out as a class. The law is applicable alike to all persons or combinations coming within the prohibition, irrespective of persons or occupation. *Levy* v. *State* (1903), 161 Ind. 251; *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190; *Davis Coal Co.* v. *Polland, supra.*

The power of each state to regulate the relative rights and duties of all persons, individual or corporate, within its jurisdiction, for the public convenience and the public good, is well grounded. *Lake Shore, etc., R. Co.* v. *Ohio* (1899), 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed.

702, and cases cited. If an act is unlawful, its intent is immaterial. *Addyston Pipe, etc., Co.* v. *United States, supra; United States* v. *Trans-Missouri Freight Assn., supra.* Anti-trust laws are exercised as a police power, or an analogous power. *State* v. *Firemen's Fund Ins. Co.* (1899), 152 Mo. 1, 46, 52 S. W. 595, 45 L. R. A. 363; *State, ex rel.,* v. *Schlitz Brewing Co., supra; Waters-Pierce Oil Co.* v. *State* (1898), 19 Tex. Civ. App. 1, 44 S. W. 936.

The legislature may regulate the manner of conducting a lawful private business for the public welfare, such as the sale of oleomargarine *(Plumley* v. *Massachusetts, supra; Powell* v. *Pennsylvania, supra);* the payment of wages of employes *(Hancock* v. *Yaden, supra; Slaughter House Cases, supra,* pages 120, 127) ; combinations to control prices of plumbers' supplies *(Bailey* v. *Association of Master Plumbers* [1899], 103 Tenn. 99, 52 S. W. 853, 46 L. R. A. 561) ; the operation of mines *(Holden* v. *Hardy, supra);* prohibiting combinations in restraint of trade *(Waters-Pierce Oil Co.* v. *State, supra).*

Neither is this a denial of the equal protection of the laws, for all persons like situated are treated alike. *Pittsburgh, etc., R. Co.* v. *Montgomery, supra; Leeper* v. *Texas* (1891), 139 U. S. 462, 11 Sup. Ct. 577, 35 L. Ed. 225; *In re Converse* (1891), 137 U. S. 624, 11 Sup. Ct. 191, 34 L. Ed. 796; *Caldwell* v. *Texas* (1891), 137 U. S. 692, 11 Sup. Ct. 224, L. Ed. 816; *Duncan* v. *Missouri* (1894), 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485.

Persons or corporations cannot complain that they are denied the equal protection of the laws when engaged in doing a prohibited thing without the pale of the law, and over which the legislature has power. They are entitled to no protection of the law who are engaged in an unlawful act, especially so when the act is unlawful irrespective of the statutory prohibition, and for the like reason the act is responsive to a public necessity just such as disclosed by this record, and is not an unreasonable or arbitrary selection of persons

or occupations. As was said in *Waters-Pierce Oil Co.* v. *State, supra:* "While power does not exist with the whole people to control rights that are purely and exclusively private, government may require each citizen so to conduct himself, and so use his own property, as not unnecessarily to injure another. * * * It is not meant by this that a legislature may conclusively declare a matter subject to its police authority, when in fact such is not the case—for that is a question which the courts may determine,—and under the guise of that power, by a system of confiscation and spoliation, which has no place in our government, deprive a citizen of his rights, but, as said before, when it is once determined that the subject dealt with really concerns the public welfare, it lies wholly within the police authority of the State, through its lawmakers, to determine how it shall be handled and dealt with." *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313.

At common law, from its earliest history,. combinations in restriction of competition, or in restraint of trade, have been denounced as being inimical to the public welfare, and contrary to public policy, and a statute which is simply declaratory of that law, and affixes civil and criminal penalties for its infraction, is certainly "responsive to some public necessity, suitable to subserve it, and reasonable in its operation upon the persons whom it affects." *Republic Iron & Steel Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136.

There is a class of cases in which the strict application of noninterference with private rights of contract has been apparently carried to the farthest extreme consistent with such rights and the general rights of all persons, but a careful examination of those cases discloses that the distinction is more apparent than real, and the main question is not overlooked in the application of the law to the facts in the particular cases. Such cases are *People* v. *Sheldon* (1893), 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. 690; *Leslie* v. *Lorillard* (1888), 110 N. Y. 519, 18 N. E. 363, 1 L. R. A.

Knight & Jillson Co. *v.* Miller—172 Ind. 27.

456; *Cohen* v. *Berlin & Jones Envelope Co.* (1899), 56 N.
Y. Supp. 588, 38 Hun, App. Div., 499; *Whitwell* v. *Continental Tobacco Co.* (1903), 125 Fed. 454, 60 C. C. A. 290,
64 L. R. A. 689; *Gloucester, etc., Glue Co.* v. *Russia Cement
Co.* (1891), 154 Mass. 92, 27 N. E. 1005, 12 L. R. A. 563, 26
Am. St. 214; *Bohn Mfg. Co.* v. *Hollis* (1893), 54 Minn. 223,
55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. 319; *Macauley* v.
*Tierney* (1895), 19 R. I. 255, 33 Atl. 1, 37 L. R. A. 455, 61
Am. St. 770; *Oakdale Mfg. Co.* v. *Garst* (1896), 18 R. I. 484,
28 Atl. 973, 23 L. R. A. 639, 49 Am. St. 784.

There is also a distinction between contracts in partial restraint of trade, arising from dealings between vendors and vendees, by which one agrees, within limitations, not to enter the same business, though the result may be to affect competition in some degree. The true test is whether the contract or combination, in its apparent purpose or natural consequence, places a restriction upon competition, or tends to create a monopoly, or is inimical to trade or commerce, and it is not necessary that a pure monopoly is effected, or that the restraint is a complete one. *Jackson* v.
*Stanfield* (1894), 137 Ind. 592, 23 L. R. A. 528; *Addyston
Pipe, etc., Co.* v. *United States, supra; Burrows* v. *Interborough, etc., Co.* (1907), 156 Fed. 389; *Ellis* v. *Inman Poulsen & Co.* (1904), 131 Fed. 182, 65 C. C. A. 488; *Thomas* v.
*Cincinnati, etc., R. Co.* (1894), 62 Fed. 803; *Chicago, etc.,
Coal Co.* v. *People* (1905), 214 Ill. 421, 73 N. E. 770; *Fishburn* v. *City of Chicago* (1898), 171 Ill. 338, 49 N. E. 532, 39
L. R. A. 482, 63 Am. St. 236; *More* v. *Bennett* (1892), 140
Ill. 69, 29 N. E. 888, 15 L. R. A. 361, 33 Am. St. 216; *Klingel's Pharmacy* v. *Sharp & Dohme* (1906), 104 Md. 218, 64
Atl. 1029, 7 L. R. A. (N. S.) 976, 118 Am. St. 399; *State* v.
*Adams Lumber Co.* (1908), (Neb.), 116 N. W. 302; *Cleland*
v. *Anderson* (1902), 66 Neb. 252, 92 N. W. 306, 96 N. W.
212, 98 N. W. 1075, 5 L. R. A. (N. S.) 136; *Walsh* v. *Association of Master Plumbers* (1902), 97 Mo. App. 280, 71 S.

W. 455; *Texas Standard Oil Co.* v. *Adoue* (1892), 83 Tex. 650, 19 S. W. 274, 15 L. R. A. 598, 29 Am. St. 690.

This proposition is not at variance with the doctrine that a producing corporation or individual may buy out a competitor, though the result may affect competition, and that may be its purpose, or may require another to sell, or refuse to sell to certain persons, and may fix prices, or that which one may do singly he may delegate others to do, or that what they may lawfully do singly they may lawfully do in concert, even though the result may be to undersell a rival, but this must be done in the open, and fairly, without fraud, intimidation or artifice, and without combination in violation of law, and so long as a monopoly is not produced, or no obstacle to the free volition and unhampered action of the competitor is interposed; but the control of commodities, which are the necessities of life, or of material necessary or 16. essential to building, or to sanitary regulations, or of subjects of legitimate trade affecting the interests of the public, or the interests of any particular class of citizens, either as producers, dealers or consumers, to the extent that it either prevents, or tends to, prevent or restrain competition, cannot be justified. The reason is apparent in the impossibility of determining where the line of separation shall be drawn, and so the seal of condemnation is set not alone upon the accomplished purpose, but upon the power of restraint or prevention. This court has probably gone as far as is consistent with private rights of contract, liberty of action, and the rights of the public, in *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 2 L. R. A. (N. S.) 788, but the distinction is there pointed out as to the limits imposed by the general rules of law. The danger in courts' attempting to determine how far competition may be interfered with, or how far it may be restrained, is well pointed out in *Addyston Pipe, etc., Co.* v. *United States, supra.*

It is urged that plumbers' supplies are neither necessities of life nor staple commodities. We think they are both. For sanitary purposes they are indispensable, for heating and lighting they are no less so. It has been held that beer is a necessity, and wall paper, and plumbers' supplies are certainly more essential in the uses to which they are put. *Nester* v. *Continental Brewing Co.* (1894), 161 Pa. St. 473, 29 Atl. 102, 24 L. R. A. 247, 41 Am. St. 894; *Continental Wall Paper Co.* v. *Lewis Voight & Sons Co.* (1906), 148 Fed. 939, 78 C. C. A. 567.

It is also urged that the act is unconstitutional as being in violation of article 1, §1, of the Constitution, which is simply a general declaration of rights, and of article 1, §23, denying privileges or immunities to one citizen or classes of citizens, which upon the same terms shall not equally belong to all. The answer to this objection is twofold: (1) Said §23 of the Constitution, as applied to this case in its contractual features, refers to lawful contracts, and not to agreements which are in and of themselves unlawful, and does not attempt to infringe upon the right of lawful contracting; (2) it does not profess to affect any who do not come within the classification of those who by doing the prohibited, unlawful acts become guilty of conspiracy. The privilege and immunity from civil damages and criminal punishment, the right of contract, and free conduct of business are common to all persons save those who place themselves voluntarily within the proscribed class. *State* v. *Richcreek* (1906), 167 Ind. 217, 5 L. R. A. (N. S.) 874, 119 Am. St. 491; *Indianapolis Cable St. R. Co.* v. *Citizens St. R. Co.* (1891), 127 Ind. 369.

There is little similarity and no analogy between this case and *Street* v. *Varney Electrical Sup. Co.* (1903), 160 Ind. 338, 61 L. R. A. 154, 98 Am. St. 325, and *Republic Iron & Steel Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136. In each of those cases the subject of lawful, and not unlawful contracts was involved.

It is insisted that the act is invalid because it is limited to dealers, mechanics and artisans, and because the equal protection of the laws is denied to consumers and the public generally. It is a sufficient answer to this objection that so long as appellants are not in the class of consumers, or the public generally, and the act properly applies to and is valid as to appellants, the latter cannot be heard to question the constitutionality of an act which cannot affect them or their rights. We think the classification is one which the legislature might properly make. *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 300; *Currier* v. *Elliott* (1895), 141 Ind. 394; *Henderson* v. *State, ex rel.* (1894), 137 Ind. 552, 24 L. R. A. 469.

We do not think this cause falls within the case of *Ex parte Young* (1908), 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, and the cases there cited, as being a case in which the punishment and penalties under the act are so severe as to deter resort to the courts for determination of the rights of those against whom it is directed. *Waters-Pierce Oil Co.* v. *Texas* (1909), 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417.

It must be borne in mind that no new offense is created, and, being declaratory of the common law, no doubtful question arises such as might be the case of a statute which is a marked innovation, and this is a potent factor in determining whether the punishment imposed is of such a character as to be subject to the inference of being enacted with a view to deter those affected from invoking the jurisdiction of the courts. Rather, it belongs to that class of cases where the penalties imposed for infractions of the long-recognized law may be imposed as deterrents, and for the public good, by reason of their severity. *Allen* v. *Flood* [1898], L. R. A. C. 1, 131; Bishop, Crim. Law (8th ed.), §210.

The sufficiency of the evidence to sustain the findings is challenged. The evidence is voluminous, but we have ex-

amined it with care, and find evidence on all the questions upon which findings were made. Upon the main question of combination to refuse to sell to non-association merchant plumbers, there was much direct evidence both ways, and evidence from which such combination might be inferred. On all questions there was evidence to support the court's findings, and we cannot disturb them on the weight of the evidence. The conclusions of law were correctly stated.

No reversible error is made to appear, and the judgment is affirmed.